228 So.2d 800

**J. J. COLLIER and Johnie Kuglar**

**v.**

**Barto BROWN and D. W. Segars, Jr.**

**6 Div. 710.**

Supreme Court of Alabama.

Nov. 7, 1969.

Rehearing Denied Dec. 11, 1969.

Witcher & Young, Birmingham, Brobston & Brobston, Bessemer, for appellants.

Huey, Stone & Patton, Frank Marsh, Bessemer, for appellees.

**42**

MADDOX, Justice.

Appellants, J. J. Collier and Johnie Kuglar, complainants in the trial court, brought an action for declaratory judgment against appellees, Barto Brown and D. W. Segars, Jr., asking that the court declare the rights of the parties under two agreements over which a controversy had developed.

The case was tried without a jury and submitted upon the pleadings, oral testimony, exhibits and stipulation of the parties.

The trial court entered a final decree finding that Collier and Kuglar, the appellants, fraudulently entered into an agreement with appellees Brown and Segars for the purpose of defrauding Brown and Segars.

Collier and Kuglar had entered into an agreement with Brown and Segars on November 21, 1963, whereby Collier and Kuglar purchased all the capital stock of a corporation, Ponderosa Estates, Inc., for the sum of $103,352.00. Collier and Kuglar gave three notes to cover the purchase price secured by a mortgage assignment and chattel mortgage. It is undisputed that Collier and Kuglar agreed to pay to Brown and Segars, or their heirs and assigns, the sum of $1,000.00 from the proceeds of the sale of each lot of property in the subdivision known as Ponderosa Estates, Inc. The agreement also provided that the failure of Collier and Kuglar to make these payments upon sale of each lot would give Brown and Segars a lien on all of the assets of Ponderosa Estates, Inc.

Collier and Kuglar defaulted under the 1963 agreement, having failed to make the payments as required, but a subsequent agreement was drawn on November 19, 1965, and it is this agreement which gives rise to the controversy. In this second agreement, entered into by Collier and Kuglar, their respective wives, and Brown and Segars, the parties recited the fact that Collier and Kuglar had defaulted by failing to make payments as agreed. They further agreed that a fifteen day extension of time, up to midnight December 5, 1965, would be given to Collier and Kuglar within which to remedy their default. If the default was not remedied, all the assets of Ponderosa Estates, Inc., would become the property of Brown and Segars.

In October, 1965, shortly prior to the date of the execution of the second agreement between the parties, Ponderosa Estates, Inc., had conveyed certain of the lots to Kuglar Construction Co., Inc. Johnie Kuglar, one of the appellants here, owned ninety-eight percent (98%) of the stock in the Kuglar Construction Co. Ponderosa had also conveyed certain lots in the subdivision to Collier Development Co., Inc., a corporation. J. J. Collier, one of the appellants here, was president of this company and his children owned all its capital stock.

The question at issue is whether the 1965 agreement released Collier and Kuglar from the obligations of the agreement of November 21, 1963. To decide this question it is necessary to refer to the agreement itself. Paragraph 4 of the 1965 agreement provides:

"4. All lots in the 3rd Sector of Ponderosa Estates which have been conveyed by Ponderosa Estates and for which the sum of One Thousand and no/100 _____Dollars ($1,000.00) per lot has not been paid to the First National Bank of Birmingham as provided in the contract of November 21, 1963, shall be reconveyed to Ponderosa Estates, Inc., on December 6, 1965. Mrs. Lovene C. Kuglar, wife of Johnny [sic] Kuglar,

one of the parties of the first part, and Mrs. Novel Morrow Collier, wife of Julius Jefferson Collier, the other party of the first part, join with their respective spouses in the execution of this agreement for the purpose of binding and obligating themselves to join in the execution of any deeds, bills of sale, conveyances and other agreements that may be necessary or desirable in order to accomplish and carry out the provisions of this agreement."

Brown and Segars claim, and the trial court found, that Collier and Kuglar had not complied with this provision and were not released from the obligations of the agreement made November 21, 1963. Brown and Segars claim, and the trial court found, that they were deceived by Collier and Kuglar since the appellees had no knowledge of the conveyances made by Ponderosa to Kuglar Construction Co. and Collier Development Co., and since Kuglar and Collier knew they could not convey these lots because they were held by the two corporations.

Collier and Kuglar say that the deeds of conveyance were duly filed of record, that the parties were dealing at arm's length, that there was no duty on their part to inform Brown and Segars of the conveyances, and that Brown and Segars should have required that the corporations sign the agreement of 1965 if they were to be fully protected.

There is no question that Collier and Kuglar defaulted under the original agreement. The record shows that Collier and Kuglar initiated the request for an extension of time to remedy the default. The 1965 agreement recites the fact of this default. The record also shows that attorneys representing appellees Brown and Segars prepared the 1965 agreement.

The decision of the issue turns on whether the reconveyance provision of paragraph 4 of the second agreement covered the conveyances made to the two corporations or whether the provisions of

the agreement covered only conveyances made to the individuals who made the agreement, i. e., Collier, Kuglar, and their respective wives.

This court has ruled on many occasions that it will construe doubtful terms in a contract more strongly against the party who framed them, and that when an instrument is capable of two constructions, it should receive the one most unfavorable to the maker. Alabama-Tennessee Natural Gas Co. v. City of Huntsville, 275 Ala. 184, 153 So.2d 619 (1963); King v. Capitol Amusement Co., 222 Ala. 115, 130 So. 799 (1930). It is not disputed that appellees' attorney drew the second agreement.

■ We are not unfamiliar with the rule advanced by the appellees that there is a presumption in favor of the findings of fact of the trial court where testimony is taken ore tenus. However, such a presumption does not exist where the trial court erroneously applies the principles of law involved. St. Clair Industries, Inc. v. Harmon's Pipe & Fitting Co., 282 Ala. 466, 213 So.2d 201 (1968). Furthermore, many of the facts were stipulated in this case, including the verity of the two agreements and the fact that the attorneys for the appellees prepared both agreements.

The trial court set forth in its decree:

" * * * [T]he complainants knew or should have known at the time they entered into said agrement that they could not comply with said agreement to reconvey all lots in the 3rd sector of Ponderosa Estates for which the sum of $1,000.00 had not been paid to The First National Bank of Birmingham as provided in the contract of November 21, 1963, which is Exhibit 'A' to the Bill of Complaint, and the court finds the complainants fraudulently entered into said agreement dated November 19, 1965, for the purpose of defrauding respondents and fraudulently discharging their obligations to respondents. * * * *"

Even assuming that Collier and Kuglar knew or should have known at the time

they entered into the second agreement that they could not reconvey all the lots for which the sum of $1,000.00 had not been paid, was there a duty on their part to inform Brown and Segars of these facts? We think not.

■ Our cases hold that when both parties are intelligent and dealing at arm's length, with no confidential relations, that no duty to disclose exists when information is not requested, and that mere silence is then not a fraud. There must be active concealment or misrepresentation. Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550 (1945).

We have examined the record very carefully and find no evidence which would show that Collier and Kuglar were asked about the status of the titles to the lots or that they were under any duty to disclose facts concerning the status of the titles to the lots which had been conveyed and on which the $1,000.00 had not been paid.

■ A general rule of contract law states that when the parties reduce their agreements to writing, the writing—in the absence of mistake or fraud or ambiguity—is the sole expositor of the transaction and the intention of the parties. Joseph v. Hopkins, 276 Ala. 18, 158 So.2d 660 (1963).

■ Here, the parties did reduce their agreement to writing and the appellees could have easily required Kuglar Construction Co. and Collier Development Co. to join in the execution of the second agreement as did the wives of Kuglar and Collier.

■ We have examined the record and find no allegation in the pleadings, as finally settled, claiming "fraud" on the part of Kuglar and Collier. The findings of the trial court that Collier and Kuglar were guilty of fraud, under our cases, must be supported by pleadings and proof. Fraud is a conclusion of law and must be pleaded and proved. Crommelin v. Capitol Broadcasting Co., 280 Ala. 472, 195 So.2d 524 (1967).

■ Appellees argue that the appellants failed to specifically argue the eight assignments of error which were assigned, as required by Supreme Court Rule 9, which states that assignments of error not substantially argued in brief will be deemed waived and will not be considered by the court. That there was not a literal compliance with this rule is apparent, but as we have said on other occasions, we will give the rule a liberal construction where there has been substantial compliance. The case here is short and simple, and a strict compliance with the rule is considered unnecessary to an understanding of the assignments of error. City of Montgomery v. Mott, 266 Ala. 422, 96 So.2d 766 (1957).

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, MERRILL and HARWOOD, JJ., concur.