384 So.2d 83 (1980)
JIM SHORT FORD SALES, INC. and James E. Short
v.
Robert L. WASHINGTON.
Robert L. WASHINGTON
v.
FORD MOTOR CREDIT COMPANY, INC.
78-645, 78-664.
Supreme Court of Alabama.
March 28, 1980.
Rehearing Denied May 30, 1980.
*84 Orrin R. Ford of Najjar & Najjar, C. Stephen Trimmier and Stephen F. Springfield, of Trimmier & Hartman, Birmingham, for appellants Jim Short Ford Sales, Inc. and James E. Short.
Grover S. McLeod, Birmingham, for appellee/appellant Robert L. Washington.
Charles Cleveland, of Gordon, Cleveland & Gordon, Birmingham, for appellee Ford Motor Credit Co.
Rehearing Denied in 78-664 May 30, 1980.
SHORES, Justice.
These cases involve an attempt by a victim of an admitted insurance fraud to recover punitive and compensatory damages. The complaint, as finally amended, alleged that defendants James E. (Jim) Short, Norman Smoake and Jim Short Ford Sales, Inc., conspired to defraud the plaintiff, Robert Washington, and the Ford Motor Credit Company knew or should have known of the conspiracy and fraudulently suppressed the information from the plaintiff. The action against Ford Motor Credit Company (hereinafter referred to as FMCC) was severed from the action against the other defendants and tried separately. Plaintiff received a jury verdict of $5,000.00 compensatory damages (subsequently remitted to $750.00) and $150,000.00 punitive damages in his suit against Jim Short, Jim Short Ford Sales, and Norman Smoake. FMCC obtained a directed verdict at the close of plaintiff's case against it. Both verdicts were appealed and consolidated for purposes of oral argument before this Court, and will be discussed together in this opinion.
On January 7, 1974, Robert Washington, a serviceman stationed at Fort Campbell, Kentucky, purchased a Pontiac Ventura automobile from Jim Short Ford Sales, Inc., in Birmingham. He financed the purchase of the automobile and of a 30-month collision insurance policy on it through the Ford Motor Credit Company. The $520 insurance premium covered the full period of the finance contract and was required by the lender. Washington was informed at the time of purchase by Harry Ort, finance and insurance representative of Jim Short Ford, that his insurance would be placed through the Norman Smoake Agency, a reputable insurance broker. He then returned with the car to his base in Kentucky.
On January 8, 1974, Norman Smoake received the full amount of the premium from FMCC, although his insurance license had expired on December 31, 1973, and was not renewed by the Department of Insurance. Smoake then placed an application for insurance for one year, rather than 30 months, with Special Risk Covers, Inc., but no insurance was ever issued for Mr. Washington.
A month after making his purchase, plaintiff returned to Birmingham to determine why no policy had been issued him. He was unable to contact Norman Smoake, who had gone out of business. He did speak to someone at Ford Motor Credit Company, where he was informed that he had no coverage, and would have to obtain some immediately, although FMCC declined to reimburse him for the premium already paid. He subsequently purchased a one-year policy from Allstate Insurance Company for $170.
These facts are undisputed, and establish no more than a breach of a contractual obligation. Facts from which a jury could find the existence of a conspiracy to defraud and knowledge of that conspiracy by FMCC are as follows:
Norman Smoake testified that he had agreements with both Jim Short and Harry Ort whereby each of them would receive a certain amount of money for every insurance transaction sent Smoake's way. Ort was provided with a bogus rate sheet, which, it is alleged, contained rates much in excess of those actually charged by the insurers, and which were not approved by the Department of Insurance. Smoake also provided Ort with so-called "binders" to be used as proof of insurance for the lender's purposes. Both Ort and Jim Short testified that they were unaware that Smoake was not actually placing insurance on many of the deals. However, Ort testified that there were daily complaints from people *85 who discovered they were not covered by insurance, and Jim Short testified that he had his body shop do $17,000.00 worth of work on these uninsured cars, which he charged off as a bad business debt. Ort further testified that, beginning in 1973, at least one lending institution, Birmingham Trust National Bank, refused to accept loans insured by Norman Smoake.
Smoake further testified that he had kept detailed records of all transactions with Ort, Jim Short, and other dealers with whom he had similar arrangements. Each entry in his record book included the amounts kicked-back to his partners. According to this book, Ort received $116 of the $520 premium which plaintiff had financed with FMCC, and Jim Short received $50. Over the course of their dealings, Ort received at least $60,000 from Smoake, and Short $25,000.
In September of 1973, the State Department of Insurance began an investigation of Norman Smoake's activities, during the course of which investigators made numerous visits to Jim Short Ford Sales and FMCC. Personnel at both those businesses were notified that the "binder" used by Norman Smoake did not, in fact, bind anyone and was not proof of insurance. Michael Debellis, an investigator for the Department of Insurance, testified that he informed Harry Ort that the rate sheet Smoake had given him was not approved by the Department of Insurance and was excessive. This interview was conducted in the presence of Jim Short. Debellis also testified that, in going through files at FMCC, he found evidence of systematic, massive overcharges on insurance placed by Norman Smoake, as well as instances where no insurance had been placed at all. The manager, Ralph Cochran, was informed of this but took no action to terminate FMCC's dealings with Smoake.
Cochran himself testified that FMCC required insurance to be placed on all cars which it financed. He further testified that, although FMCC did not have a lender's license, so that loans were arranged solely between the purchaser and the dealer, it provided the loan forms used by the dealer and approved the terms of the transaction and the buyer's credit by telephone prior to the closing of each deal. This procedure was followed in Mr. Washington's case.
As a result of the Department of Insurance's investigation, Norman Smoake and Harry Ort eventually pleaded guilty to criminal charges. Jim Short pleaded guilty to charges of income tax evasion.

I.

Jim Short Ford Sales, Inc., et al. v. Robert L. Washington
Appellants in this action contend that the trial court erred in refusing to grant a new trial after counsel for plaintiff alluded in closing argument to the wealth of the defendants, the delay before the case was brought to trial, and other frauds allegedly perpetrated by defendants. We have carefully examined the record and conclude that any prejudice aroused by these remarks was cured by the trial court's admonitions to the jury. In the matter of closing argument, much is left to the trial court's judgment and its rulings are presumed to have been sufficient to remove any opprobrium unless the record reveals substantial prejudice. State Farm Mutual Automobile Insurance Co. v. Boyer, 357 So.2d 958 (Ala.1978), Old Southern Life Insurance Co. v. Woodall, 348 So.2d 1377 (Ala. 1977).
Appellants also contend that it was error to submit a verdict form to the jury which allowed it to assess the same amount of punitive damages as against all defendants, because all the defendants were not joint tortfeasors. Appellants cite no authority in support of this proposition, and we are unable to find any ourselves. We, therefore, decline to disturb the trial court's ruling, and leave the verdict form to its discretion.
Appellant Jim Short contends that he was entitled to a directed verdict in his favor because no evidence was introduced to tie him in with the conspiracy, and because *86 there existed no proximate cause between the charge of conspiracy and the damages alleged (lack of insurance). Once again, we must agree with the trial court's ruling. Our review of the record indicates that there was sufficient evidence on these issues to send them to the jury.
In short, in reviewing these and other issues raised, we are constrained by the familiar rule that every presumption is to be indulged in favor of the trial court, and its findings and decrees will not be disturbed unless palpably wrong. Hicks v. Hicks, 348 So.2d 1368 (Ala.1977), Myers v. Parker, 349 So.2d 1136 (Ala.1977). We find no such palpable abuse, and affirm the judgment rendered below.

II.

Robert L. Washington v. Ford Motor Credit Company, Inc.
Plaintiff brought suit against FMCC under Code 1975, § 6-5-102, which reads:
Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case. [Emphasis added.]
The trial court granted defendant's motion for a directed verdict at the close of plaintiff's case, apparently on the grounds that no relationship existed between the parties which would require disclosure. For the reasons discussed herein, we reverse.
Code 1975, § 6-5-102, is a codification of the common law. Metropolitan Life Insurance Co. v. James, 238 Ala. 337, 191 So. 352 (1939). It embodies one of several judicially created exceptions to the ancient rule that no action will lie for tacit nondisclosure. The common law rule expressed the spirit of the caveat emptor doctrine, and has become riddled with exceptions as that doctrine has proved increasingly unsuited to modern commercial conditions. See, generally, Prosser, Torts (4th Ed. 1971), Chap. 18, § 106. See Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550 (1945), for a local expression of this general rule.[1] One such exception is that which places an affirmative duty of disclosure upon those occupying a confidential or fiduciary position vis-a-vis the plaintiff. Additionally, Prosser notes that
... there has been a rather amorphous tendency on the part of most courts to find a duty of disclosure in cases where defendant has special knowledge or means of knowledge not open to the plaintiff and is aware that the plaintiff is acting under a misapprehension as to facts which would be of importance to him and would probably affect his decision. [Prosser, supra, p. 697]
Our own statute recognizes that situations other than those involving fiduciary relationships may give rise to a duty to disclose by providing that the "obligation to communicate may arise ... from the particular circumstances of the case." Our case law has construed such circumstances to exist where parties were not dealing at arm's length, Williams v. Bedenbaugh, 215 Ala. 200, 110 So. 286 (1926), and where plaintiff entered into a contract with an insolvent after communicating with defendant, who knew of such insolvency, but did not reveal it, Chapman v. Rivers Construction Company, 284 Ala. 633, 227 So.2d 403 (1969). A duty to speak depends upon the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances. Hall Motor Co. v. Furman, 285 Ala. 499, 234 So.2d 37 (1970). He who joins in the consummation of a transaction, known to have been negotiated by fraud, becomes a party to the fraud. Williams v. Bedenbaugh, supra. The U. S. Court of Appeals for the Fifth Circuit, applying Alabama law in discussing this issue, has remarked:

*87 ... [T]he types of relationships wherein a duty to disclose has been found indicate that the Alabama courts give little attention to the designation of the relationship, such as vendor-vendee, etc., but instead look to the relative bargaining positions of the parties. [Citations omitted.] Where one party has some particular knowledge or expertise not shared by the plaintiff a duty to disclose has been recognized. Cf. Collier v. Brown, 285 Ala. 40, 228 So.2d 800 (1969).
First Virginia Bankshares v. Benson, 559 F.2d 1307 (5th Cir. 1977). Thus, each case must be individually examined to determine whether a duty of disclosure exists; a rigid approach is impossible, and, indeed, the words of the statute itself counsel flexibility.
In the instant case, there is evidence which indicates that (1) FMCC required insurance on automobiles which it financed and was aware that the insurance on many, if not all, installment sales contracts which it purchased from Jim Short Ford was written by Norman Smoake, (2) the manager of FMCC knew that Smoake was under investigation by the Department of Insurance and was provided with evidence that Smoake was not only grossly overcharging clients but, in some cases, actually writing no insurance on them at all; (3) while not directly participating in plaintiff's sales and insurance transaction, FMCC made it possible by financing the purchase, providing the forms, and approving the transaction by telephone before its completion. We hold that this evidence is sufficient to create a jury question as to the existence of a duty to disclose on FMCC's part. If we accept FMCC's contention that no such duty exists as a matter of law, we accept the proposition that a finance company could knowingly issue loans for the purchase of non-existent insurance. Surely this is the type of situation which Code 1975, § 6-5-102, was intended to prevent. For this reason, we hold that the trial court erred in directing a verdict in favor of FMCC.
The judgment in favor of FMCC appealed by plaintiff Washington is reversed and remanded. The judgment in favor of plaintiff Washington appealed by Jim Short Ford Sales, Inc., et al. is affirmed.
CASE NO. 78-645 AFFIRMED.
CASE NO. 78-664 REVERSED AND REMANDED.
TORBERT, C. J., and MADDOX, JONES and BEATTY, JJ., concur.

ON APPLICATION FOR REHEARING
SHORES, Justice.
On application for rehearing, Ford Motor Credit Company contends that this Court has confused the records of the two cases which were consolidated for argument on appeal, but which were tried separately, and that the record in its case, considered separately from that of its companion case, Robert L. Washington v. Jim Short Ford Sales, Inc., et al., presents no evidence from which a jury could conclude that it had any duty of disclosure to the plaintiff. In an excess of caution, we have returned to that record, and re-examined it in the light of appellant's contentions. We conclude that the facts enumerated in the opinion as supporting such a finding are well-supported by the record. Applicant's point is not well taken.
OPINION EXTENDED. APPLICATION FOR REHEARING OVERRULED.
TORBERT, C. J., and MADDOX, JONES and BEATTY, JJ., concur.
NOTES
[1] ... [O]ur cases seem to hold that when both parties are intelligent and fully capable of taking care of themselves and dealing at arms' length, with no confidential relations, that no duty to disclose exists when information is not requested, and that mere silence is then not a fraud. There must be active concealment or misrepresentation. [247 Ala. at 377, 24 So.2d at 562]