This appeal involves an action by Robert L. Washington (plaintiff) against Ford Motor Credit Company (FMCC) alleging fraudulent suppression of facts material to the financing of an automobile purchased by plaintiff. This case previously was before us in Jim Short Ford Sales, Inc. v. Washington,384 So.2d 83 (Ala. 1980), where we reversed the judgment of the trial court and remanded for a new trial as to FMCC. On retrial, the case again was tried before a jury in the Circuit Court for Jefferson County. Plaintiff received a verdict and judgment in the amount of $75,000.00. After FMCC's unsuccessful motion for judgment notwithstanding the verdict, or in the alternative for a new trial, it appealed.
FMCC raises four issues on this appeal:
1. Whether plaintiff failed to establish reliance on the allegedly suppressed material facts, thereby requiring that the trial court grant FMCC's motions for a directed verdict or JNOV.
2. Whether this court's opinion in Jim Short Ford Sales, Inc.v. Washington, supra, is in error and should be reversed.
3. Whether plaintiff failed to establish facts entitling him to have the case submitted to the jury on the issue of punitive damages.
4. Whether the jury's award was excessive so as to require this court to grant an order of remittitur.
After reviewing the evidence adduced at trial we answer the questions posed by the above issues in the negative and we, therefore, affirm the judgment of the trial court.
The facts established at trial were substantially similar to those noted in the earlier appeal of this case. Jim Short FordSales, Inc. v. Washington, supra. In that earlier consolidated appeal, we affirmed judgments against co-defendants James E. (Jim) Short, Norman Smoake, and Jim Short Ford Sales, Inc. Plaintiff's action against FMCC had been severed and tried separately. It resulted in a judgment favorable *Page 16 
to FMCC when it obtained a directed verdict at the close of plaintiff's case. We reversed, holding that plaintiff adduced sufficient evidence to go to the jury on plaintiff's theory of fraudulent suppression:
 In the instant case, there is evidence which indicates that (1) FMCC required insurance on automobiles which it financed and was aware that the insurance on many, if not all, installment sales contracts which it purchased from Jim Short Ford was written by Norman Smoake, (2) the manager of FMCC knew that Smoake was under investigation by the Department of Insurance and was provided with evidence that Smoake was not only grossly overcharging clients, but, in some cases, actually writing no insurance on them at all; (3) while not directly participating in plaintiff's sales and insurance transaction, FMCC made it possible by financing the purchase, providing the forms, and approving the transaction by telephone before its completion. We hold that this evidence is sufficient to create a jury question as to the existence of a duty to disclose on FMCC's part.
Jim Short Ford Sales, Inc. v. Washington, at 87.
On retrial, the facts adduced again showed the following: Plaintiff purchased a 1972 Pontiac Ventura automobile from Jim Short Ford Sales, Inc., on January 7, 1974. Plaintiff paid $300.00 and financed the balance of the purchase price, which included a $520.00 charge for automobile insurance. Harry Ort, of Jim Short Ford Sales, Inc., obtained financing for plaintiff. Ort called FMCC in plaintiff's presence and arranged a loan. Plaintiff testified that Ort told him the automobile insurance could be obtained through Norman Smoake. Plaintiff obtained his automobile, but never received his insurance policy. Upon investigation he learned that no policy had ever been written for him. FMCC knew, at the time, that Smoake was overcharging on premiums and selling insurance without writing the policies. Smoake testified that he was involved in a kickback scheme with Harry Ort and Short. The kickback was in return for Smoake's being sent customers. Plaintiff confronted FMCC. They acknowledged that he was uninsured, but declined to refund his $520.00 or to finance more insurance. In his complaint, plaintiff alleged that FMCC knew or should have known of the fraudulent scheme, and that it had a duty to demand that its dealer, Jim Short Ford Sales, Inc., furnish an effective insurance policy.
Plaintiff's action is based upon Code 1975, § 6-5-102, which provides:
 Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.
FMCC argues that the jury had no evidence before them from which they could reasonably infer that FMCC suppressed material facts. It contends, therefore, that the trial court erroneously denied its motions for a directed verdict or for JNOV. Central to FMCC's argument is the contention that the facts adduced at trial failed to show that plaintiff relied on the alleged suppression of facts by FMCC concerning Smoake's fraudulent insurance activities. We have reviewed the record and find FMCC's argument to be without merit. The facts clearly establish detrimental reliance by plaintiff. A contention to the contrary is simply at odds with the record.
In the first appeal of this case, supra, where the facts were substantially the same as those adduced on retrial, this court held that a case of fraudulent suppression was made out under §6-5-102, and that the trial court erroneously granted FMCC's motion for a directed verdict. The similarity of the present facts to those of the first trial leads us to conclude that a case of fraudulent suppression again was made out. We, therefore, decline to re-examine this court's holding in the first appeal.
FMCC argues that the trial court should have granted its motion for a directed verdict on the issue of punitive damages. It theorizes that plaintiff adduced no evidence *Page 17 
to support such an award. We disagree. In the first appeal of this case, this court opined that FMCC's actions brought it within the ambit of § 6-5-102. Thus, if "gross or oppressive" conduct on the part of FMCC can be shown, an award of punitive damages is proper. Mobile Dodge, Inc. v. Waters, 404 So.2d 26
(Ala. 1981); Freeman v. First State Bank of Albertville,401 So.2d 11 (Ala. 1981); Winn-Dixie Montgomery, Inc. v. Henderson,395 So.2d 475 (Ala. 1981); Boulevard Chrysler-Plymouth v.Richardson, 374 So.2d 857 (Ala. 1979).
The record discloses the following facts: Michael DeBellis, an investigator for the State Department of Insurance, began investigating Smoake in September 1973. He went to Birmingham, Alabama, and checked 50 to 60 of Smoake's insurance applications at the office of Special Risk Covers, Inc., an insurance broker. He took the applications to FMCC where he spoke with Ralph Cochran, FMCC's assistant branch manager in Birmingham. DeBellis asked Cochran to pull 50 files. None had insurance and each had an invoice from Smoake. DeBellis informed Cochran that the invoices were not certificates of insurance and that customers' claims probably could not be collected. Overcharging on insurance premiums was present in all 50 files. DeBellis called that to Cochran's attention. One customer had been overcharged by $1,100.00. In November 1973, DeBellis returned to FMCC. He found no change in its operation. Cochran was still accepting Smoake's ineffective "binders." DeBellis informed Cochran that numerous complaints had been filed against Smoake.
Thorpe Forester testified that he was Deputy Insurance Commissioner in 1973. In September 1973, he spoke with Cochran and asked him to pull at random 10 to 15 files of customers whose loans were financed as the result of sales through Jim Short Ford. He pointed out that the Smoake binders, in fact, bound no one.
Cochran testified that FMCC continued to do business with Smoake until he could no longer write insurance:
 Q. All right. Now, in other words, you quit doing business with him when he was out of business?
A. That's a logical conclusion.
Q. And that is a good terminology, isn't it?
A. Yes, sir.
 Q. And in other words, he was no longer there for you to do business with, so you could not do business with him?
A. Yes.
 Q. And you never really quit accepting Smoake's binders, did you?
A. No, sir, not till he was out of business.
Cochran testified that he knew some of the Smoake "binders" were not signed. He stated that he really did not care if they were legal binders and that he knew in October 1973 that Smoake was not writing insurance on all transactions in which he was involved.
When plaintiff went to FMCC, after learning that he had no insurance, FMCC acknowledged that he was uninsured. FMCC refused to reimburse plaintiff the $520.00 he had borrowed for the premium, and told him that his vehicle had to have insurance coverage.
The imposition of punitive damages in a fraud case is discretionary with the jury, which considers the question "with regard to the enormity of the wrong and the necessity of preventing a similar wrong." Neil Huffman VolkswagenCorporation v. Ridolphi, 378 So.2d 700 (Ala. 1979); quoted with approval in Cecil Crews Chevrolet-Oldsmobile, Inc. v. Williams,394 So.2d 912 (Ala. 1981). Under the facts described above, we find that the jury could infer FMCC's actions were gross or oppressive. Likewise, we find no abuse of the jury's discretion in its award of punitive damages. It appears that almost all of the $75,000.00 awarded by the jury was for punitive damages. The jury could have found FMCC's actions worthy of a deterrent in the amount of damages awarded. Accordingly, we find no merit to FMCC's argument on this point. *Page 18 
FMCC also argues that the jury's award of $75,000.00 was excessive and that this court should enter an order of remittitur. In Carlisle v. Miller, 275 Ala. 440 at 444,155 So.2d 689 at 692 (1963), this court stated:
 It is almost platitudinous to restate the guiding rules, but here they are: The verdict of a jury should not be interfered with merely because in the opinion of the court the jury gave too little or too much (Vest v. Gay [275 Ala. 286, 154 So.2d 297] supra; Airheart v. Green, 267 Ala. 689, 104 So.2d 687; Alabama Great Southern Ry. Co. v. Baum, 249 Ala. 442, 31 So.2d 366); and the authority vested in the courts to disturb a verdict of the jury on the ground of excessiveness is one which should be exercised with great caution. Airheart v. Green, id.; McLaney v. Turner, 267 Ala. 588, 104 So.2d 315; Louisville Nashville Ry. Co. v. Tucker, 262 Ala. 570, 80 So.2d 288, 298. Where, as here, there is no set standard for the admeasurement of damages but the damages to be awarded are left to the sound discretion of the jury, remittur [sic] or a new trial should not be ordered on the ground of excessiveness of the jury's verdict except in those cases where the court can clearly see that the verdict has been reached on account of bias, passion, prejudice, corruption, or other improper motive or cause. Airheart v. Green, supra; Yarbrough v. Mallory, 225 Ala. 579, 144 So. 447. And only where the damages allowed are so excessive as to warrant the belief that the jury must have been misled by some mistaken view of the merits of the case should the court interfere and set the verdict aside (National Surety Co. v. Mabry, 139 Ala. 217, 35 So. 698); also, where the trial court refuses to grant a new trial because he does not believe the verdict is excessive the favorable presumption attending the jury's verdict is thereby strengthened. International Union, etc. v. Palmer, 267 Ala. 683, 104 So.2d 691; Birmingham Electric Co. v. Howard, 250 Ala. 421, 34 So.2d 830.
Cited with approval in Aspinwall v. Gowens, 405 So.2d 134 (Ala. 1981).
As we stated regarding the previous issue, we find the jury's award to be proper and we decline to set it aside. The jury's award falls within the rules stated in Carlisle v. Miller,supra. Consequently, we cannot find reversible error as FMCC contends.
For all of the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.