This action was tried to a jury on alternative theories of fraud and conversion, claiming both compensatory and punitive damages. The jury returned a general verdict for $30,000.00, in favor of Plaintiff Taylor-Holmes *Page 52 
and against Defendant Coosa Valley Bank. Defendant Bank's motions for directed verdict, judgment notwithstanding the verdict, and remittitur were denied. This appeal followed.
In May of 1977, Clarence Eugene Taylor obtained a $48,000.00 SBA loan through Coosa Valley Bank for the business Taylor-Holmes Industrial Supply, Inc. Ninety per cent of the loan was guaranteed by the Small Business Administration. The loan was secured in part by the inventory of the business and partially guaranteed by Taylor, individually. After making five payments on the indebtedness, Taylor, as president of Taylor-Holmes, notified Coosa Valley Bank that the business was failing but that the inventory, when liquidated, would yield sufficient funds to cover the outstanding loan amount.
Claude Springfield, president of Coosa Valley Bank, sent Taylor to Birmingham for discussions with representatives of the SBA. An SBA representative then came to Coosa Valley Bank for a meeting with Springfield and Taylor. As a result of that meeting, an agreement was executed by the parties on January 10, 1978, which provided that a special account would be opened to receive only the proceeds from the sale of the Taylor-Holmes inventory, to pay the salary of Taylor as he continued to try to sell the inventory ("quickly and for the best possible price"), and to pay the rent for the warehouses where the inventory was stored. The language of the agreement was to the effect that the arrangement would terminate on February 10, 1978, unless all parties mutually agreed to an extension of its terms. From January through May of 1978, $19,000.00 was deposited into the special account.
The subsequent events, and the disparate testimony with regard to those events, form the basis for Taylor's complaint and this action.
Coosa Valley Bank claims that the written agreement was extended until the end of May, 1978, when it was terminated and Taylor picked up his last paycheck from the Bank and turned in his keys to the warehouses. Taylor, however, denies that he was ever given notice of the termination of the agreement, and says that he had turned in his keys to the warehouses merely as an accommodation to the representatives of Mid-South Industries, Inc. (formerly Etowah Manufacturing Co. Inc.), which company had expressed an interest in purchasing the remaining Taylor-Holmes inventory and may have needed to inspect the goods. Taylor further maintains that he indicated to Coosa Valley Bank that he would continue to work to sell the inventory, but without pay.
Taylor estimated the retail value of the remaining inventory to be $30,000.00, but placed the wholesale cost at $14,854.31. Coosa Valley Bank, says Taylor, agreed not to sell the inventory for less than $13,854.31, and, further, promised to call Taylor before allowing anyone to inspect the inventory. Coosa Valley Bank president, Springfield, admitted that Taylor did say that he would like to get at least $13,000.00 for the inventory, but that there was no indication of the volume of inventory remaining at that time. Springfield denies that Taylor ever told him not to accept less than $13,854.31.
Taylor concedes that at the time he told Coosa Valley Bank about his discussions with Mid-South he was told by Springfield that the Chairman of the Board of the Bank was also the Chairman of the Board of Mid-South.
Coosa Valley Bank contends that when the agreement with Taylor was terminated the principal amount due the Bank on the Taylor-Holmes loan was $38,203.67, and that Taylor was told of the termination of the agreement. On May 30, 1978, says Bank, it wrote a letter to the SBA requesting that the SBA purchase its portion of the promissory note from Taylor-Holmes, and that Bank gave notice to Taylor of such request. Further, Bank claims that, as of May 30, 1978, it assigned to the SBA all of Bank's interest in and to the note, security agreement, and real property mortgage securing the Taylor-Holmes loan. *Page 53 
In June of 1978, Mid-South offered Coosa Valley Bank $6,500.00 for the remaining inventory. Coosa Valley Bank claims that, because it had assigned its interest in the inventory to the SBA, a call was made to the SBA to relay Mid-South's offer, which the SBA accepted. In the latter part of June, 1978, Mid-South took possession of the inventory and on July 21, 1978, payment was made by Mid-South to the SBA through Coosa Valley Bank.
Coosa Valley Bank consistently maintained that the SBA's valid security interest in the inventory gave the SBA the right to dispose of the inventory and that Coosa Valley Bank merely acted for the SBA in the sale of the inventory to Mid-South. The testimony of John Duncan and Paul Stevens, SBA employees at the time of the Taylor-Holmes loan, reveals that the SBA did not take over the "servicing" of the Taylor-Holmes loan until July 1, 1978, and that up until the time the SBA paid Coosa Valley Bank under the guaranty agreement, Coosa Valley Bank alone had the responsibility of servicing the Taylor-Holmes loan.
Further, Coosa Valley Bank president, Springfield, testified that the Bank did receive monies from Taylor after May 30, 1978, and that the Bank received payment from the SBA for the guaranteed portion of the loan on August 4, 1978.
Eugene Taylor testified that his efforts to sell the inventory went well past the May 30, 1978, date of his final paycheck and alleged termination of the agreement. Indeed, Taylor took money to Springfield at the Bank during June for an inventory sale, and Taylor's discovery of the empty warehouses in early July was the result of another sale of a portion of the inventory which necessitated his visiting the warehouses.
A representative of Mid-South estimated the value of the inventory on the list Mid-South was given to be $6,500.00, but stated that $1,000.00 worth of inventory from the list was missing.
Initially, we point out that our review of this action is guided by the normal presumptions of correctness afforded verdicts and judgments, and the further strength that is given to verdicts and judgments by the trial court's denying motions for new trial, judgment notwithstanding the verdict, and remittitur. Pearson v. Fountain, 280 Ala. 1, 189 So.2d 551
(1966); Smart v. Wambles, 271 Ala. 651, 127 So.2d 611 (1961).
The posture of this case on appeal is placed in perspective by the following quoted portion from Coosa Valley Bank's brief:
 "In summary, this case involves an agreement to liquidate inventory securing a promissory note. Taylor and Taylor-Holmes claimed, in essence, that the Bank converted their inventory and sold it to Mid-South for less than the inventory was worth, contrary to a promise to keep Taylor advised and to insist on a sales price of $13,854.31, and at a time when an agreement was in force which required Taylor's participation in any sale of the inventory. The Bank's position was that no such promises had been made, that the liquidation agreement had been terminated, that the SBA had the right to sell the inventory, and that $6,500.00 was a reasonable price under the circumstances.
". . .
"STATEMENT OF THE ISSUES
"ISSUE NUMBER ONE
 "Whether the Court erred as a matter of law in submitting the case to the jury on the theories of conversion and fraud (suppression of a material fact). [Cites omitted.]
"ISSUE NUMBER TWO
 "Whether the damage award was excessive. [Cites omitted.]"
Coosa Valley Bank then summarizes the factual basis for its contentions of error with respect to "Issue Number One:"
 "Regardless of [the disputed testimony respecting the extension of the agreement], Springfield wrote a letter to the SBA on May 30, 1978, requesting it to purchase its portion of the Bank's note. On the same date the Bank assigned to the SBA all of its interest in the promissory *Page 54 
note, security agreement and real property mortgage dated May 18, 1977. As a matter of fact, on May 30, 1978, the agreement between the parties terminated because there was no mutual agreement that it should be extended. Claude Springfield clearly understood he was no longer operating under the same agreement of January 10, 1978, which required debtor and Taylor to sell the inventory. Taylor said he would continue to `help market the inventory without any pay.'
 "Subsequent to May 19, 1978, the SBA had a security interest in the inventory made the basis of this suit by virtue of Coosa Valley's assignment."
Having examined all of Coosa Valley Bank's contentions of error, we find this issue to be of the most probable merit for our consideration on appeal, and the one most strongly urged by counsel for Coosa Valley Bank. The central thrust of Coosa Valley Bank's argument on this point is that, assuming a fact issue was presented by the evidence with respect to Coosa Valley Bank's alleged suppression of material facts and Taylor-Holmes's reliance thereon to its detriment, the evidence, nevertheless, was insufficient to support an award for damages proximately flowing from such suppression.
Code 1975, § 6-5-102, is a portion of the law in Alabama dealing with fraud, misrepresentation, and deceit. That section states:
 "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
The application of this section to particular instances of alleged fraud has produced a background of case law which requires that a party with particular knowledge with respect to his relationship with another party disclose such knowledge to the other party. This law further holds, however, that the special circumstances of each case require that the analysis of this type of alleged fraud be done on a case by case basis. "[A] rigid approach is impossible, and, indeed, the words of the statute itself counsel flexibility." Jim Short Ford Sales,Inc. v. Washington, 384 So.2d 83, 86 (Ala. 1980). See, also,First Virginia Bankshares v. Benson, 559 F.2d 1307 (5th Cir. 1977); Hall Motor Co. v. Furman, 285 Ala. 499, 234 So.2d 37
(1970); Collier v. Brown, 285 Ala. 40, 228 So.2d 800 (1969).
That flexibility, however, cannot be used to circumvent the requirement that testimony tending to prove the commission of a fraud must be supported by evidence tending equally to connect the alleged fraud with the damages claimed by the injured party.
The inferences which the jury in the instant case could have drawn from the evidence of Coosa Valley Bank's "self dealing," taken together with Taylor's testimony respecting the Bank's representation that it would not sell the inventory for less than $13,854.31 without notice to him, meet the requisite nexus between the alleged fraud and the injury to Taylor-Holmes. It is this testimony that made a fact issue for the jury as to the elements of the "suppression of material fact" species of legal fraud. Chapman v. Rivers Construction Co., 284 Ala. 633,227 So.2d 403 (1969); Metropolitan Life Insurance Co. v. James,238 Ala. 337, 191 So. 352 (1939). The jury was free to infer from the totality of the circumstances that, because of the SBA guarantee, the Bank stood to lose virtually nothing by a reduced sale of the inventory; that the chairman of the board of the Bank, who was also chairman of the board of Mid-South, stood to gain substantially by a reduced sale; and that, as among all the parties other than the SBA, only Taylor-Holmes stood to lose.
The Bank's challenge of the sufficiency of the evidence as to the "detrimental reliance" element is misplaced. Reliance is implicit in the relationship of the parties which imposes the duty on the part of the one (Bank) not to act contrary to its representations to the detriment of the other *Page 55 
(Taylor-Holmes). Once the jury resolved this fact issue — whether the Bank represented that it would notify Taylor before it liquidated the inventory for less than $13,854.31 — favorably to Taylor-Holmes, it was warranted in further concluding that Taylor-Holmes's loss (the difference between $13,854.31 and the actual price of $6,500 paid by Mid-South) was the direct result of the Bank's conflict-of-interest dealings. Taylor's experience in disposing of the inventory furnished a reasonable inference that he had the right to expect, at the very least, the wholesale list price for the remaining inventory. There was also evidence from which the jury could find that the goods could have been sold at the retail value of $30,000.00, which Taylor testified without contradiction was the retail value.
Moreover, once the jury resolved these factual issues favorably to Taylor-Holmes, it was free to find the requisite intent to injure to support an award of punitive damages. Smithv. Big Three Motors, Inc., 412 So.2d 1222 (Ala. 1982).
We find no merit in the Bank's claim of excessiveness of the verdict.
AFFIRMED.
All the Justices concur.