The defendant, Trio Broadcasters, Inc., appeals from a judgment entered on a jury verdict in favor of the plaintiffs, Walter and Marguarite Ward, in this action to recover damages; the verdict was based on a count claiming fraudulent suppression of material facts. We reverse and render judgment in favor of the defendant.
This dispute arose out of a proposed real estate transaction between the plaintiffs and the defendant. The defendant entered into a written contract with the plaintiffs for the purchase of a 25-acre tract of land on which the defendant planned to erect a radio transmitter tower. The contract specified (at the plaintiffs' request) that the closing was to be "on or before July 1, 1983, time being of the essence." However, the closing date was rescheduled for July 14, 1983, to allow the plaintiffs extra time in which to secure the payoff and release of several mortgages on the land. (The contract provided that "A Further Period of 30 days shall be allowed for closing if (a) the closing is delayed . . . by . . . title defects which can be readily corrected. . . .") In the interim the plaintiffs prepared and submitted to the defendant a deed that would have made the property subject to a mortgage held by a third party; that mortgage secured a debt of the plaintiffs to the third party, and that debt was much greater than the purchase price of the land. The defendant found that deed objectionable. No closing took place on July 14. The defendant never purchased the plaintiffs' land, but instead, made other arrangements for the location of its transmitter.
The plaintiffs filed a three-count complaint against the defendant: the first count alleged breach of contract, the second count alleged misrepresentation, and the third count alleged fraudulent suppression of material facts. The facts suppressed were alleged as follows:
 "21. All the while that the defendant was telling the plaintiffs that the defendant would be willing to close on or about the [14th] day of July 1983, or shortly thereafter, the defendant was engaged in negotiations [for another transmitter site] that would eliminate the need for *Page 623 
the defendant to make the purchase from the plaintiffs.
 "22. Rather than advising the plaintiffs that the defendant was pursuing a business proposition that would make the sale from the plaintiffs to the defendant unnecessary, the defendant willfully, intentionally and maliciously failed to disclose that fact to the plaintiffs. . . ."
The defendant answered and filed a counterclaim.
The jury found in favor of the defendant on counts one and two, and in favor of the plaintiffs on the counterclaim. The jury returned a verdict in favor of the plaintiffs on count three, awarding $37,790 in compensatory damages and $50,000 in punitive damages. The defendant's motions for a directed verdict and for a judgment notwithstanding the verdict were denied.
The defendant contends that the trial court erred to reversal in allowing count three to go to the jury. It argues that it was never under any obligation to communicate with the plaintiffs concerning any negotiations it may have engaged in for an alternate transmitter site. We agree.
The statutory basis for the plaintiff's third count is §6-5-102, Code 1975, which provides:
 "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
Under this section, silence is not fraud unless an obligation to communicate a material fact exists. Such an obligation may arise where confidential relations or "particular circumstances" exist; Berkel Co. Contractors, Inc. v.Providence Hospital, 454 So.2d 496 (Ala. 1984); Johnson v.McMurray, 461 So.2d 775 (Ala. 1984); Cooper Co. v. Bryant,440 So.2d 1016 (Ala. 1983).
In the present case, there is no question that the parties were, at all times, dealing with each other at arm's length. The evidence conclusively showed that the parties not only were knowledgable in the area of real estate transactions but were represented by their respective real estate brokers and simply occupied the positions of buyer and sellers in a proposed real estate transaction.
This Court has defined a "confidential relationship" as follows:
 "`[A relationship in which] one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another."
Holdbrooks v. Central Bank of Alabama, 435 So.2d 1250, at 1252 (Ala. 1983), quoting 15A C.J.S. Confidential (1967).
There is no evidence that a confidential relationship existed between the parties in this case. Our cases are consistent in stating that when the parties to a transaction deal at arm's length, with no confidential relations, no obligation to disclose arises when, as in this case, information is not requested. See Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550
(1945); Collier v. Brown, 285 Ala. 40, 228 So.2d 800 (1969);Webb v. Renfrow, 453 So.2d 724 (Ala. 1984). *Page 624 
The plaintiffs argue that under the "particular circumstances" of this case, the defendant did have an obligation to inform them about its negotiations concerning an alternate transmitter site.
Application of the "particular circumstances" language contained in § 6-5-102, supra, necessarily requires a case-by-case consideration of several factors. Quoting from JimShort Ford Sales, Inc. v. Washington, 384 So.2d 83 (Ala. 1980), the Court, in Berkel Co. Contractors, Inc. v. ProvidenceHospital, supra, stated:
 "`A duty to speak depends upon the relation of the parties, the value [materiality] of the particular fact, the relative knowledge of the parties, and other circumstances. Hall Motor Co. v. Furman, 285 Ala. 499, 234 So.2d 37 (1970). . . . Thus, each case must be individually examined to determine whether a duty of disclosure exists; a rigid approach is impossible, and, indeed, the words of the statute itself counsel flexibility."
454 So.2d at 505, quoting Jim Short Ford Sales, Inc. v.Washington, 384 So.2d 83, 86-87 (Ala. 1980).
Before an obligation to disclose can be imposed under the "particular circumstances" of a case, the relationship existing between the parties, while not necessarily required to be confidential, must nonetheless be such that a disclosure of material information is dictated. As previously stated, the parties in this case were dealing with each other at arm's length through their respective real estate brokers. There is no evidence of unequal bargaining power. The parties were certainly entitled to enter into other negotiations to protect their interests in the event the sale was not closed pursuant to the contract.
Considering the relative knowledge of the parties, our cases recognize that an obligation to disclose does not arise where the parties to a transaction are knowledgeable and capable of handling their affairs. See Mudd v. Lanier, supra; Collier v.Brown, supra; Marshall v. Crocker, 387 So.2d 176 (Ala. 1980);Cooper Co. v. Bryant, supra. Such is the case here. Walter Ward testified that he was a licensed real estate salesman with past experience in real estate transactions. There is no evidence of any physical or mental impairments which could have affected the plaintiffs' actions.
However, the plaintiffs insist, and the evidence does tend to show, that George Beasley, the defendant's president, was of the opinion that the defendant was not obligated under the contract subsequent to July 1 because of the plaintiffs' inability to close on that date, but that the defendant continued to negotiate with them while at the same time negotiating for an alternate site for its transmitter. The plaintiffs argue that had they known of the defendant's other negotiations, they would not have incurred considerable expense in paying off the mortgages which encumbered their title.
The question of whether the defendant was obligated under the contract subsequent to July 1 is not before us. The jury found from the evidence that the defendant did not breach its contract with the plaintiffs. We can only infer that the jury found that the defendant was prepared to perform but was discharged from its obligations under the contract because of some action or inaction on the part of the plaintiffs. The thrust of the plaintiff's argument is that after July 1, the defendant did not intend to be bound by the contract and was, therefore, under an obligation to inform plaintiffs of that fact as well as of the fact that it was negotiating for an alternate transmitter site. We must disagree.
Section 6-5-102, supra, imposes an obligation to disclose only material facts, even when a confidential relationship exists. Even though George Beasley may have considered the defendant free of its contractual obligations as of July 1, it is difficult to see how any negotiations which the defendant may have had after July 1 *Page 625 
concerning an alternate transmitter site were in any way material to the ongoing negotiations with the plaintiffs. The plaintiffs were just as much aware of the terms and obligations set out in the contract as the defendant was (e.g., delivery of clear title to defendant). The plaintiffs were entitled to consult counsel as to the validity of the contract after July 1. There certainly could have been no obligation on the part of the defendant to advise the plaintiffs of the uncounseled legal conclusion of its president concerning the validity of the contract. Moreover, in our view, the defendant was under no more of an obligation at the time to disclose any negotiations that it might have been engaged in concerning an alternate site for its transmitter than the plaintiffs were to disclose any negotiations that they might have entered into with other prospective purchasers. See Merchants National Bank v. Steiner,404 So.2d 14 (Ala. 1981). If we accept the plaintiffs' contention that the defendant had an obligation to disclose under the facts of this case, we accept the proposition that any participant in an arm's length commercial transaction has an absolute legal duty to disclose other contacts or negotiations made or engaged in as a "back up" in the event of an unsuccessful transaction. Commercial realities considered, this is not the kind of disclosure contemplated by the legislature.
We have examined the record very carefully in this case and find no evidence sufficient to create an obligation of disclosure on the defendant's part. Consequently, the trial court erred in allowing count three to go to the jury. The defendant's motion for a directed verdict should have been granted.
Because we are reversing the judgment of the trial court, we need not consider the other issues raised by the defendant.
The judgment of the trial court entered pursuant to the jury's verdict is, therefore, reversed and judgment is rendered in favor the defendant.
REVERSED AND JUDGMENT RENDERED.
TORBERT, C.J., and ALMON, BEATTY and STEAGALL, JJ., concur.