The plaintiff, The Collins Company, Inc. ("Collins"), appeals from a judgment entered on a directed verdict on claims for negligence, breach of contract, fraud, and suppression, on behalf of the defendants, the City of Decatur ("City"), George Godwin, David L. Parks, and Paul B. Krebs Associates, Inc. ("Krebs"). This suit arises from events surrounding the construction of additions to the Dry Creek Wastewater Treatment Plant in Decatur, Alabama, and, in particular, from the application of the federal Davis-Bacon Act wage rates to that project.
 I. The facts
Early in 1978, the City entered into an agreement with the Environmental Protection Agency ("EPA") for additions to the Dry Creek facility. Under the terms of this agreement, the EPA furnished 75 per cent of the necessary funding, and the City provided the remaining 25 per cent. In exchange, the City-EPA agreement required the City to pay laborers in accordance with wage rates determined under the federal Davis-Bacon Act. Subsequently, the City entered into a contract by which Krebs was to provide general engineering supervision, to draw plans and specifications, to prepare the project bid and construction documents, and to assist the City *Page 1129 
in awarding the construction contract. The City retained authority to change construction specifications.
As part of the plans and specifications documents, Krebs provided each bidding contractor wage rate decisions that were furnished by the EPA. These wage rates are formulated by the United States Department of Labor based upon prevailing regional wage rates, and are published in the Congressional Record. Three wage rates applied to the Dry Creek project: building, heavy, and water and sewer. Krebs furnished a set of these plans and specifications to each bidder on the project, but did not reference an appropriate wage rate for each element of the construction project, as suggested by the EPA in two letters sent to Krebs in June 1978.
In addition, Krebs prepared invitation-to-bid documents that contained certain requirements for bidders submitting bids on this project. One requirement instructed bidders to comply with the Davis-Bacon wage scales. If any bidder had any doubt as to the meaning of any part of the plans, specifications, or other proposed contract documents, the bidder could submit a written request to the engineer for interpretation. Any interpretation of the contract document was to be made by a written addendum, and the owner would not be responsible for any other interpretation of the contract. In April 1979, Collins submitted the low bid and was selected as the general contractor. The requirement to comply with the Davis-Bacon wage scales was then incorporated into the contract between the City and its general contractor, Collins.
Collins never applied the three wage rates to the construction project; rather, it applied one rate, heavy, to all of the structures constructed at Dry Creek. On June 9, 1981, the Department of Labor visited the job site and conducted an investigation. A number of months later, it informally told Collins that Collins had improperly calculated its wage rates and owed its laborers an amount equivalent to the higher "building" wage rate. A Collins officer testified that he decided to "fight them." In January 1982, Krebs received another letter from the EPA asking that it "Be sure to double check promptly all payrolls, estimates, etc., and obtain any needed corrections to meet all Labor Standrads [sic] requirements." Krebs filed this letter, without notifying Collins of its contents or existence. In May 1982, the Department of Labor formally notified Collins in writing of its position regarding the wage rates. True to its word, Collins did litigate the issue with the Labor Department. The dispute was settled for less than the Department claimed, but at a cost of $130,000 to Collins.
Collins filed this suit on September 17, 1983, alleging that the defendants caused a disruptive wage investigation and backwage assessment by the Department of Labor when they failed to advise Collins on how to apply the multiple Davis-Bacon wage rates on the items of work contained in the contract documents. Collins further alleged that the defendants had withheld and incorrectly transmitted pertinent wage information provided them by the EPA, that the defendants had failed properly to monitor Collins's wage payments during the construction, and that the defendants had misrepresented and suppressed material wage information. In addition, Collins maintained that the City had wrongfully withheld a significant contract payment for five months after it came due. The complaint asserted claims for declaratory judgment; breach of contract by the City; breach of contract by the City and Krebs; breach of contract duties by the City arising under the EPA grant agreement, injuring Collins, a third-party beneficiary of that contract; misrepresentation of project wage information by the City and Krebs; suppression of project wage information by the City and Krebs; and breach of the City-Krebs contract by misrepresentation and suppression, injuring Collins, a third-party beneficiary of that contract.
At the close of the plaintiff's case and at the close of all the evidence, the defendants filed motions for directed verdict on all counts of the Collins complaint. The trial court granted the defendants' motions. The trial court denied post-trial motions by *Page 1130 
Collins, and Collins appealed. The issue presented this Court for review is whether the trial court erred when it directed a verdict on all counts of the plaintiff's complaint.
 II. The standard of review
The standard of review this Court applies to motions for directed verdict is identical to the standard used by the trial court in granting or denying the motion. Turner v. Peoples Bankof Pell City, 378 So.2d 706, 709 (Ala. 1979). Thus, when reviewing the trial court's ruling, we determine whether there is sufficient evidence below to produce a conflict warranting jury consideration. Baker v. Chastain, 389 So.2d 932, 934 (Ala. 1980). This Court will reverse a judgment entered on a directed verdict when the record contains any evidence supporting the theories of the complaint, and will affirm the granting of a motion for directed verdict only when the evidence is such that, when viewed in a light most favorable to the non-moving party, reasonable men must draw the same conclusion. See,Weatherly v. Hunter, 510 So.2d 151, 153 (Ala. 1987).
 III. The plaintiffs claims on appeal A. The breach of contract claims
Collins argues that the City, and Krebs as the City's agent, breached the City-Collins contract by failing to provide Collins with the information necessary for Collins to comply with the Davis-Bacon Act, by interfering with Collins's performance of its obligations under the contract, by refusing promptly to pay funds for Collins's work when approved and released for payment by EPA, and by failing to ensure that Collins complied with the Davis-Bacon Act.
Under Alabama law, whether an agreement is ambiguous is a question of law for the court to determine. Terry Cove North,Inc. v. Baldwin County Sewer Authority, Inc., 480 So.2d 1171,1173 (Ala. 1985). Where the contract is unambiguous, the court must determine the force and effect of the contract as a matter of law. Gold Kist, Inc. v. Ford, 439 So.2d 39, 42 (Ala. 1983). Further, "when parties reduce their agreements to writing, the writing — in the absence of a mistake, fraud or ambiguity — is the sole expositor of the transaction and the intention of the parties." Collier v. Brown, 285 Ala. 40, 44, 228 So.2d 800
(1969). We must, therefore, look to the City-Collins agreement to determine what duty, if any, was owed by the City to Collins.
Collins does not dispute that Krebs provided it with the information necessary to comply with the Davis-Bacon Act. Krebs provided each bidding contractor with wage rate decisions as part of the plans and specifications documents. These documents were expressly incorporated into the City-Collins contract. Rather, Collins argues that because Krebs failed to reference wage rates for each element of the contract, as Collins claims EPA required, Krebs and the City must bear responsibility for Collins's failure to comply with the Davis-Bacon Act and for the resulting Department of Labor investigation and back-pay assessment. Collins fails, however, to indicate where this duty to reference wage rates appears in the City-Collins agreement. Instead, Collins claims that Krebs was required by the EPA to reference wage rates into construction specifications, as evidenced by two EPA letters sent to Krebs in June 1978. While it is true that this correspondence suggested to Krebs that it should reference wage rates into the construction specifications, it did not, as Collins contends, require a breakdown of each wage scale and a reference to each function assumed by the contractor under the contract. Had the contractor had any questions regarding the meaning of this document, it could have sought an interpretation from the engineer. This it did not do.
The City-Collins agreement expressly incorporates the invitation-to-bid documents prepared by Krebs. Those documents explicitly require bidders to comply with the requirements of Title VII of the Civil Rights Act of 1964; the Davis-Bacon Act, the Copeland Anti Kick-Back Act, and the Contract Work Hours and Safety Standards Act (P.L. 91-54); and the Occupational Safety and Health Administration's Safety and Health Regulations for Construction *Page 1131 
(P.L. 91-596). If Collins's argument were valid, the City would be liable to it had Collins been cited by OSHA for failure to comply with its standards, or perhaps had Collins been sued under Title VI for racial discrimination. The responsibility to comply with the Davis-Bacon Act was assumed by Collins in the same way as was the duty to comply with OSHA standards. Similarly, Collins agreed to conduct its affairs in a racially neutral fashion. Consequently, Collins cannot now shift back to the City the burden it bargained to shoulder when it agreed to comply with the Davis-Bacon Act with regard to wages.
Collins argues that an agreement entered into by the EPA, the City, Collins, and Krebs offers evidence as to the scope of the City-Collins agreement, and that from this agreement the court may infer that a duty was owed to Collins. While it is true that an EPA pre-construction report outlines the suggested responsibilities of the EPA, the grantee, City, the general contractor, Collins, and the engineer, Krebs, this report does not purport to define obligations under the City-Collins contract as Collins suggests. Indeed, this report addresses only the contractor's responsibilities associated with modifying contracts, submitting shop drawings for approval, and commencing, prosecuting, and completing the construction work. The report does not prohibit the City from delegating certain duties under the EPA-City agreement, including the responsibility of complying with selected federal labor standards. Most significantly, the pre-construction report is not one of the many documents specifically incorporated into the City-Collins agreement. Because the EPA pre-construction report is not part of the City-Collins contract, and because the City-Collins contract is the sole expositor of the transaction and the intention of the parties, we cannot find, as a matter of law, that the City has breached its agreement with Collins.
Alternatively, Collins argues that if the City-Collins contract did not create clear duties on the part of the City and Krebs, then the contract is ambiguous. If the contract is ambiguous, reasons Collins, then this Court must remand so that a jury may determine exactly what obligations were created by the agreement. We are unimpressed with this argument. The contract delineates specific obligations of the City, Krebs, and Collins. One obligation clearly created by the contract and imposed on Collins was the responsibility to abide by the strictures of the Davis-Bacon Act. It was Collins who breached this requirement, not the City and not Krebs.
Collins contends that the City breached its contract with him because Krebs did not insure that Collins complied with the contract between it and the City by paying the appropriate wage scale. Collins cannot prevail on this theory. Krebs, under the facts of this case, was not the City's agent. It was an independent contractor. Collins cannot recover against the City for any alleged breach of contract based upon activity of an independent contractor.
This Court has held that the owner is not liable for the improper conduct of its independent contractor. Boroughs v.Joiner, 337 So.2d 340, 342 (Ala. 1976). Whether one is an agent or an independent contractor depends upon the peculiar facts.Moore-Handley Hardware Co. v. Williams, 238 Ala. 189, 195,189 So. 757 (1939). Whether one is an independent contractor or an agent often depends upon whether the owner retains control over the performing party as to the manner in which the party performs its work. Alabama Power Co. v. Beam, 472 So.2d 619,626 (Ala. 1985); Thompson v. City of Bayou La Batre,399 So.2d 292, 294 (Ala. 1981). Here, the City delegated all of its duties under the City-EPA and City-Collins contracts to Krebs. The City gave Krebs full authority to supervise, manage, and inspect the construction at Dry Creek. The only right the City retained, because the EPA required the City to retain it, was the right to sign orders that materially changed construction specifications. The trial court found that Krebs was an independent contractor, and Collins produced no evidence to support a contrary conclusion. *Page 1132 
The trial court properly directed a verdict as to the breachof contract claim.
 B. The third-party beneficiary claims
Collins argues that it was a third-party beneficiary of the agreements between the City and EPA and the City and Krebs, and that any breach of contract by the City or Krebs entitled Collins to breach of contract remedies.
 "To recover under a third-party beneficiary theory, the complainant must show: 1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract was breached."
Sheetz, Aiken Aiken, Inc. v. Spann, Hall, Ritchie, Inc.,512 So.2d 99, 101-02 (Ala. 1987). (Citations omitted.) If the benefit to the third person is not intended to be a direct benefit, but rather to be merely an incidental benefit, the third person will not be entitled to damages based on a breach of that contract. Mills v. Welk, 470 So.2d 1226, 1228 (Ala. 1985).
Here, the trial court stated that Collins, claiming benefit, had to show that the contract "was . . . directly for [its] benefit or [it] was . . . incidental[ly] to [its] benefit or in construing the whole contract from its four corners [it] was for [Collins's] benefit." Collins argues that the trial court erred in its application of the law because it failed to consider, in addition to the contracts themselves, the "surrounding circumstances known to the parties." Anderson v.Howard Hall Co., 278 Ala. 491, 179 So.2d 71, 75 (1965). Defendants respond by saying that the contracts themselves are the best evidence of the intentions of the parties at the time of contracting, and that where it is plain upon the contract's face that no direct benefits were intended for the third person, then the third person is merely an incidental beneficiary and may not recover. See, Sheetz, Aiken Aiken,Inc. v. Spann, Hall, Ritchie, Inc., 512 So.2d 99 (Ala. 1987) (it was clear from the express language of the contract that the parties did not intend to bestow a direct benefit upon the third person). We agree and hold, therefore, that courts must look to the surrounding circumstances of the transaction only when the contract is unclear as to whether the contracting parties intentionally conferred upon a third person a direct benefit; consequently, the court's inquiry may stop when it determines from the face of the contract that the parties did not intend to confer upon the third person a direct benefit.
The purpose of the City-Krebs contract is expressed in its first few paragraphs. The City desired to construct certain additions and improvements, which complied with state and federal requirements, to the Dry Creek facility. To achieve this end, the City hired Krebs to advertise for bids from contractors for construction of the project; to prepare the necessary contract documents; and to manage construction and inspect structures as the project progressed. Nothing in the stated purpose of the City-Krebs contract reflects an intent to confer any direct benefits upon the contractor.
Because the City obtained a grant from the EPA to finance the improvements to the wastewater treatment facility, the City and Krebs were required to agree that their contract was subject to certain federal regulations. Krebs was bound to render all services required to complete the task in accordance with applicable EPA regulations. In the contract, Krebs agreed that the construction work on the water treatment plant would be subject to labor-standards provisions. These provisions included the Davis-Bacon Act and implementing regulations of the Secretary of Labor and the EPA. One of the labor regulations required contractors to submit weekly a copy of all payrolls and a statement verifying that the wage rates contained therein were not less than those determined by the Secretary of Labor. While Krebs assumed a duty to ensure that the contractor supplied this information, the contract does not indicate that Krebs assumed a duty to ensure that Collins's wage rates complied with federal requirements. *Page 1133 
In accordance with the regulations and appendix incorporated into Krebs's contract with the City, Krebs prepared a contract for the City and the contractor. By entering into that contract, Collins agreed that it would comply with the provisions of the Davis-Bacon Act and other applicable federal requirements. Thereafter, Krebs supplemented the addendum to the City-Collins contract with current wage rate decisions to be reviewed by Collins to assist in its compliance with the federal wage rate requirements.
While agreeing that the construction at Dry Creek would be subject to these federal requirements, neither the City nor Krebs expressed an intent to confer a direct benefit upon Collins by accepting responsibility for fines and back-wage assessments in the event Collins failed to comply with its promise to the City to adhere to the wage rate requirements in the Davis-Bacon Act. Two specific provisions in Appendix C-1 of the City-Krebs contract clearly reflect that these parties did not intend to grant legally enforceable rights to Collins.
First, in subparagraph (d) of part 2, the City and Krebs agreed that Krebs would be liable for damages caused by Krebs's negligent performance of any of the services furnished under this agreement, "except for errors, omissions or other deficiencies to the extent attributable to the Owner, Owner furnished data or any third party." We have previously held that this kind of provision does not bestow benefits directly on third persons. See, Sheetz, 512 So.2d at 100-02.
Second, part 2 of Appendix C-1 of the City-Krebs contract rebuts any contention by Collins that Krebs could be responsible for Collins's error or deficiency in not paying the appropriate federal wage rates. While Krebs may have agreed to make sure that Collins supplied weekly payrolls for the City's benefit, it never agreed to assume liability if Collins paid the wrong wage rates. As the language of the contract indicates, neither the City nor Krebs intended to enter into a contract to confer legally enforceable rights upon Collins. At most, Collins was incidentally benefited by receiving updated wage rate decisions so that it could assess its responsibilities under the Davis-Bacon Act and ensure compliance with the City-Collins contract. The City received the direct benefit of this contract, because Krebs's performance assured the City that the proper steps would be taken so that it would receive the funding promised by the EPA.
A second provision in the Krebs-City contract also suggests a lack of intent to confer upon Collins a direct, legally enforceable benefit. Part 6 of Appendix C-1 pertains to remedies for disputes or claims between the City and Krebs. No reference is made to remedies available to any third party, such as the contractor. If the owner and engineer had intended to confer a direct benefit upon Collins as a third-party beneficiary, then the City and Krebs should have provided Collins enforceable remedies in this section as well.
Nothing in the City-EPA grant agreement indicates that the purpose of that agreement was to confer a direct benefit upon the contractor. The City entered this agreement to obtain federal funding so that it could improve its wastewater treatment plant. This agreement, therefore, inured to the City's direct benefit. As a condition to receiving funding, the City agreed to require federal wage rates for all on-site construction workers. The City fulfilled this condition by delegating to Collins its duty to comply with the Davis-Bacon Act. Workers employed to assist in the construction were incidentally benefited by the federal wage requirements; however, the City-EPA contract was clearly not entered into for their direct benefit. Accord, Zeigler v. Blount BrothersConstruction Co., 364 So.2d 1163 (Ala. 1978) (power company rate-paying subscribers were not third-party beneficiaries of a contract between Alabama Power Company and Blount Brothers whereby the latter negligently constructed a dam for the former). The same is true for Collins. Nowhere in the agreement do the parties express an intent to confer a direct benefit on the contractor. *Page 1134 
We hold, therefore, that the trial court correctly determined that Collins is not a third-party beneficiary of either the City-EPA or the City-Krebs contract.
 C. The negligence claims
Collins argues that the facts of this case present several combinations of tortfeasors. Whether any of these defendants may be held liable for negligence depends, first, upon a finding that they owed a duty to Collins. The determination as to the existence of a duty is for the court, and not for the jury. Alabama Power Co. v. Dunaway, 502 So.2d 726, 731 (Ala. 1987). The trial court correctly found that no duty was owed Collins arising out of the City-Collins agreement, and that Collins was not a third-party beneficiary of either the City-EPA or the City-Krebs contract. Thus, neither the City nor Krebs owed a duty under a contract upon which Collins might have reasonably relied. We next focus upon whether the City, Krebs, Parks, or Godwin embarked upon a course of action that imposed a commonlaw duty to act reasonably. Berkel Co.Contractors v. Providence Hosp., 454 So.2d 496, 502 (Ala. 1984). The question, then, is whether the defendants assumed a duty not required by the contract when they acted affirmatively to transmit some wage information. Did Krebs's conduct fall below the standard required of engineers, under the facts of this case?
Alabama law requires that expert testimony establish the appropriate standard of care that professionals, such as architects and engineers, must exercise. R.L. Reid, Inc. v.Plant, 350 So.2d 1022, 1027 (Ala. 1977). This standard is based upon the learning, skill, and care ordinarily possessed and practiced by those ordinarily skilled in that profession.Looker v. Gulf Coast Fair, 203 Ala. 42, 45, 81 So. 832, 835
(1919). When the engineer's actions meet the standard of those skilled and experienced in that profession, the engineer has met his responsibility.
Two expert witnesses testified in this case: Paul Krebs and Felix Harris. Both witnesses testified that Krebs properly submitted EPA wage information to Collins. Mr. Harris further testified that at the time of this occurrence it was neither the custom nor the practice in the State of Alabama for engineers to advise contractors what wages to apply to various portions of a construction project. Collins argues that excerpts of Harris's testimony establish a standard of care, and that, therefore, the trial court should have allowed the jury to decide the issue of breach. Like the trial court, we are unconvinced by this argument.
Collins also argues that L.D. Collins, its president, was qualified to offer evidence as to the appropriate standard of care, and that the trial court erroneously precluded Mr. Collins from offering expert opinion testimony. The question of whether a witness may testify as an expert lies within the sound discretion of the trial court, and the court's decision will not be disturbed on appeal except for palpable abuse.Burroughs Corp. v. Hall Affiliates, Inc., 423 So.2d 1348, 1353
(Ala. 1982). The record does not indicate that Mr. Collins possesses the experience, skill, or knowledge necessary to design or draw plans and specifications for waste water treatment plants, or that he understands the standard of care applicable to engineers in designing and drawing plans and specifications for waste water treatment projects, or that he comprehends what standards engineers should use when compiling and transmitting information to contractors. We cannot say that the trial court palpably abused its discretion by rejecting Mr. Collins's testimony.
Because Collins failed to present evidence suggesting that the defendants' transfer of wage information was unreasonable, the trial court correctly granted the defendants' motion for directed verdict on this claim.
 D. The misrepresentation and suppression claims
The trial court correctly held that Collins's claims for misrepresentation and suppression *Page 1135 
were barred by the one-year statute of limitations.
At the time of the transaction or occurrence that became the subject of this litigation, actions seeking relief on the ground of fraud were restricted by a one-year statute of limitations. Ala. Code 1975, § 6-2-39 (now repealed). "The statute begins to run when the plaintiff learns facts which would provoke inquiry by a person of ordinary prudence and by simple investigation of the facts." Miller v. SCI Systems,Inc., 479 So.2d 718, 719 (Ala. 1985) (quoting the circuit court's "Memorandum Opinion and Order of Dismissal"); see §6-2-3 (the "saving clause"). The trial court found that the Department of Labor's wage investigation, which began in June 1981, created facts sufficient to provoke inquiry by a person of ordinary prudence; that simple investigation by Collins would have revealed that it was paying the wrong wage rate; and that, since Collins did not file suit until September 27, 1983, its claim was barred.
Collins argues that Krebs's failure to forward an EPA letter in January 1982, in addition to alleged representations by Mr. Harris that Collins was using the correct wage scale, constitute concealment by Krebs, tolling the statute. Indeed, § 6-2-3 provides that a "claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud." Supporting this argument, Collins quotes our holding in Kenai Oil Gas Inc. v. Grace PetroleumCorp., 512 So.2d 1347, 1351-52 (Ala. 1987). While it is true that in Kenai we held that the statute was "never meant to be interpreted so that the rule . . . could be applied so as to defeat the ultimate purpose of the law," it is also true that we did not intend Kenai to be interpreted so as to allow plaintiffs to expand the period in which they may file an action beyond that time provided in the statute. As Kenai makes clear, "A party . . . is not required to presume fraud or suspect it, until something comes to him leading a just person to suspect and make inquiry." Id., at 1352 (quoting Williamsv. Bedenbaugh, 215 Ala. 200, 204, 110 So. 286, 289 (1926)).
Collins experienced an immediate decline in productivity following the Department of Labor's arrival at the jobsite on June 9, 1981. The Department of Labor did not hide the fact that it was investigating wage rates. The Department of Labor formally notified Collins in writing that it had failed to pay its laborers the proper pay scale in May 1982, although Collins's employees admit that they had known the investigation's outcome for months prior to this notification. Yet Collins waited until September 1983 before it filed suit against the defendants. Like the trial judge, we may conclude only that the Department of Labor's investigation was that something that should have led Collins to "suspect and make inquiry."
Collins argues that its failure to file suit earlier was caused by Krebs's suppression of material facts. Alabama Code 1975, § 6-5-102, provides:
 "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
This theory is inapplicable for two reasons. First, case law interpreting the statute requires that there be a duty on the part of the defendant to disclose the material fact. Jim ShortFord Sales, Inc. v. Washington, 384 So.2d 83, 86 (Ala. 1980). Collins failed to establish that the City or Krebs owed such a duty. Second, the statute requires the suppression of a material fact. The letter sent by the EPA in January 1982, is not such a fact, given that the Department of Labor's wage investigation began in June 1981. The letter merely asks that Krebs "Be sure to double check promptly all payrolls, estimates, etc., and obtain any needed corrections to meet all Labor Standrads [sic] requirements." The Department of Labor's investigation had been underway for almost eight months at the time this letter was sent. If Collins had not *Page 1136 
double checked its payrolls by January 1982 to ensure that its wage scales complied with the Davis-Bacon Act, it is difficult for this Court to believe that this one paragraph, pro forma letter, sent to Krebs by the EPA, would have compelled it to do so.
The trial court properly directed a verdict with regard to the misrepresentation and suppression claims.
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, HOUSTON and STEAGALL, JJ., concur.
 *Page 618