Charles Keebler died when his automobile crashed into the side of a logging trailer operated by James Derrick "Buster" Garner (hereinafter "Buster Garner"). Shane Keebler, as administrator of Charles Keebler's estate, sued Glenwood Woodyard, Inc. (hereinafter "Glenwood"); Buster Garner; James Frank Garner (hereinafter "James Garner"); and Phillip Sewell, doing business as Sewell Logging Company, alleging that Buster Garner was an agent of the other defendants and was acting within the scope of his authority at the time of the accident; that the other defendants had negligently entrusted the logging truck to Buster Garner's care; that Buster Garner had negligently operated the truck and caused the accident; and that Shane Keebler had been a third-party beneficiary of a contract between Glenwood and Container Corporation of America, which was not a party to this action. The trial court entered a summary judgment for Glenwood and Sewell and made it final pursuant to Rule 54(b), A.R.Civ.P. Keebler appeals.
A summary judgment is proper and must be affirmed if there exists no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. The issue presented here is *Page 568 
whether the trial court properly determined as a matter of law that Buster Garner was acting as an independent contractor, not as an agent for Glenwood and Sewell, at the time of the accident.
Whether a relationship is an independent contractor relationship or is a master-servant relationship depends on whether the entity for whom the work is performed has reserved the right to control the means by which the work is done. Bay Shore Properties, Inc. v. Drew Corp., 565 So.2d 32
(Ala. 1990). Control is not established if the employer retains the right to supervise the employee merely to determine if the employee performs in conformity with the contract. Spell v.ConAgra, Inc., 547 So.2d 501 (Ala. 1989).
The record reveals the following facts concerning the relationship between James Garner, Buster Garner, Glenwood, and Sewell: In 1976, Glenwood engaged individual loggers to harvest timber from Glenwood forests; after the harvesting, it would utilize Glenwood drivers to haul the timber to the customer. John Harrison, president of Glenwood, hired James Garner in 1976 as a driver for the company. James Garner left this job after about one year.
In 1981, James Garner bought his own tractor and began hauling timber loads for different companies. The next year, he began hauling exclusively for Glenwood, but was not on the company's payroll; rather, he received paychecks based on the number of loads he carried each week. James Garner had no employment contract with Glenwood and did not receive insurance or other benefits of employment. He was not obliged to haul any loads for the company; rather, he would merely appear each day to learn what jobs were available and could work as much or as little as he desired. Glenwood required James Garner to obtain liability insurance coverage for his tractor before he could haul loads for the company. Because James Garner was unable to pay the lump sum premium required to obtain the insurance, John Harrison paid it for him and thereafter withheld a portion of his weekly pay to recoup the premiums.
In 1991, Harrison informed James Garner that Glenwood would no longer directly handle the hauling of the timber it sold to its customers and recommended that James Garner seek work from Phillip Sewell. Sewell was self-employed as a logger, and his primary customer was Glenwood. Sewell harvested timber from tracts of land owned by Glenwood and then hired independent drivers who owned their own tractors to deliver it for Glenwood. Sewell thereafter hired James Garner to make some of these deliveries. There was no written contract between Sewell and James Garner as to any of the individual hauls Garner performed; Sewell would merely tell James Garner what the job was and how much it would pay, and Garner then determined whether he would take it. Because James Garner did not own his own trailer at that time, he sometimes rented a trailer from Glenwood to haul loads for Sewell.
In 1992, Container Corporation contracted with Glenwood to harvest and deliver timber. That contract required Glenwood to provide liability insurance on the driver and tractor-trailer used to make the delivery. Glenwood, in turn, contracted with Sewell to perform this work and Sewell hired James Garner to make the delivery. James Garner then offered the job to his son, Buster Garner, who accepted it.
On February 13, 1992, Sewell cut the timber and loaded it onto the Glenwood trailer, then attached the trailer to Buster Garner's tractor. Sewell told James Garner which mill to deliver the timber to and paid him. Sewell did not pay Buster Garner, direct his route, or otherwise attempt to oversee the trip. Buster Garner departed the Ft. Deposit cutting site, driving his own tractor and towing the rented trailer. The accident occurred early the next morning.
Shane Keebler argues that James Garner was an agent of Glenwood, because the president of Glenwood had obtained liability insurance for James Garner and had rented a Glenwood trailer to him for use in hauling the timber. Because Glenwood made it possible for James Garner to work, Keebler concludes, it retained control over him and thus became his principal. *Page 569 
We find no merit in this argument. By obtaining the necessary insurance for James Garner, the president of Glenwood did enable him to work; however, this does not establish that Glenwood retained control over themanner in which he worked. Although Glenwood rented a trailer to James Garner, it did not control how he used the trailer and did not instruct him as to the method or route he should use to deliver the load. Most importantly, neither Sewell nor Glenwood authorized Buster Garner's use of the trailer or James Garner's hiring of Buster to haul the timber. The record is devoid of evidence to establish an agency relationship between Buster Garner and the other defendants; thus, as to this issue the trial court properly entered the summary judgment for Glenwood and Sewell.
Shane Keebler next argues that Charles Keebler was a third-party beneficiary of the contract provision that required Glenwood to insure the vehicles used to deliver the timber under the contract. The provision reads:
 "(13) Prior to providing services under this contract, SUPPLIER will provide and furnish CONTAINER with proof of coverage of Comprehensive General Liability Insurance of not less than $1,000,000 per occurrence combined single limit and Comprehensive Automobile Liability Insurance including owned, non-owned, and hired vehicles of not less than $1,000,000 and certificate must name Jefferson/Smurfit Container as an additional insured. SUPPLIER's or their subcontractors or agents shipping exclusively by rail without entering CONTAINER property are not required to provide proof of insurance."
One claiming to be a third-party beneficiary must establish that, when they entered into the contract, the contracting parties intended to bestow a direct benefit on the third party. Whitehead v. USA-One, Inc., 595 So.2d 867 (Ala. 1992). Where the contracting parties bestowed a benefit on some third party but it is clear from the face of the contract that the contracting parties did not intend to confer this benefit directly on the third party, the third party is merely an incidental beneficiary and may not recover. Collins Co. v. Cityof Decatur, 533 So.2d 1127 (Ala. 1988).
The contract contains no language suggesting that Container Corporation required Glenwood to carry liability insurance on its trucks in order to confer a direct benefit on motorists on a public highway; rather, it is clear that Container Corporation primarily sought to protect itself from liability for any injury to third persons arising from performance of the contract. Container Corporation and Glenwood were the insureds under the required policy and thus received the primary benefit from it; any benefit conferred to third parties under this policy would be incidental.
The trial court properly held that Charles Keebler was not a third-party beneficiary of the contract, and its judgment was proper as to this issue.
AFFIRMED.
ADAMS and INGRAM, JJ., concur.
HORNSBY, C.J., and ALMON, J., concur in the result.