MADDOX, Justice.
ReLife, Inc., petitions for a writ of mandamus relating to a lawsuit pending in the Perry Circuit Court. ReLife seeks a writ directing the trial court to set aside its order denying ReLife’s motions to strike certain claims of the plaintiff and to strike a third-party complaint, and/or to transfer the case to the Jefferson Circuit Court.

Facts

The facts of this case are rather complex. Tricare Rehabilitation Systems, Inc., was an Alabama corporation that provided rehabilitation care through in-patient and out-patient clinics. Its stockholders included George B. Warren, Jr., George B. Warren, Sr., and John T. Sumner, Jr. (referred to collectively as “the Tricare stockholders”). Tricare’s principal place of business was in Birmingham, and the corporation never operated within Perry County, where this case was filed. Tricare is now in involuntary bankruptcy.
On May 2, 1991, Tricare borrowed $300,-000 from Colonial Bank, giving a promissory note to the bank in that amount. In order to secure this loan, Florence Warren, the wife of George Warren, Sr., and the mother of George Warren, Jr., and who herself is not a stockholder or officer of Tricare, pledged to Colonial Bank various certificates of deposit owned by her that were in the possession of Colonial Bank. Mrs. Warren alleges that she was given guarantee agreements signed by her husband, her son, John Sumner, and Tricare that provided that Mrs. Warren would be made whole by those four signers if she had to pay the Colonial note. The four signers also executed a promissory note in the amount of $40,000 in favor of Mrs. Warren.
In February 1993, ReLife, a Birmingham-based corporation that provides rehabilitation services and that has no operations in, or connections to, Perry County, entered into a purchase agreement in Birmingham in which it agreed to buy all assets from Tricare and its affiliates, none of which did any business in Perry County. Tricare, ReLife, and Brookwood Hospital then entered into an “interim management agreement.” Pursuant to this agreement, ReLife agreed to take over the management of a Tricare rehabilitation facility located at Brookwood Hospital in Birmingham. One part of the agreement provided that ReLife would “make up any negative cash flow items” from the operation of the Tricare facility.
Tricare defaulted on the Colonial loan, and Mrs. Warren, who had pledged her assets as collateral, was called upon to pay Colonial $125,413.94.
Mrs. Warren, who is a Perry County resident, then sued in the Perry County Circuit Court, asserting a claim against her son, her husband, and their business associate John Sumner. Her complaint sought the *666 enforcement of the guaranty agreement and promissory note given her by these three defendants in 1991. Of the three, only her husband resided in Perry County. A few days after the complaint was filed, these three Tricare stockholders filed a third-party complaint alleging that “if they owe Florence Warren,” then “[ReLife] owe[s] them,” based on the interim management agreement.
On April 6, 1994, ReLife filed a motion to strike the third-party complaint, alleging that the third-party plaintiffs’ claims against ReLife were not dependent upon the outcome of Mrs. Warren’s claim against the third-party plaintiffs. This motion was renewed on May 8,1995.
In February 1994, petitions for involuntary bankruptcy were filed against Tricare. The bankruptcy court appointed a bankruptcy trustee to oversee Tricare’s affairs. On September 25,1994, Tricare’s trustee and ReLife entered into an agreement that purported to resolve any and all disputes. ReLife was granted a release against any claims Tricare may have had against it or any claims purportedly on behalf of Tricare.[1] This release was also filed with the Perry County Circuit Court as an appendix to a joint stipulation of dismissal of any claims; it was signed by Trieare’s bankruptcy trustee.
In August 1995, Florence Warren amended her complaint to allege that she was a third-party beneficiary of the contract between Tricare and ReLife. Additionally, the other defendants/third-party plaintiffs — the Tricare stockholders — filed cross-claims against ReLife reasserting the claims they had made in the third-party complaint. ReLife filed a motion to strike the amended complaint and cross-claims, alleging once again that Mrs. Warren’s claim against the Tricare stockholders does not arise out of the same transaction or series of transactions as her alleged claim against ReLife and does not involve issues of law or fact common to her claims against the Tricare stockholders, and also alleging that the Tricare stockholders do not have standing to pursue the third-party claim or cross-claims. The trial court denied ReLife’s request to strike the claims as being improperly joined and denied the alternative motion to transfer the ease to Jefferson County.
Subsequently, ReLife filed this petition, seeking a writ of mandamus directing the trial court to strike claims made against it by Mrs. Warren and the third-party plaintiffs/cross-claimants, the three Tricare stockholders, or, in the alternative, directing the trial court to transfer the case to the Jefferson Circuit Court.
This Court has stated many times that a writ of mandamus is “a drastic and extraordinary writ to be issued only where there is (1) a clear legal right in the petitioner to the *667 order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” Ex parte Edgar, 543 So.2d 682, 684 (Ala.1989). Where the exercise of an inferior court’s discretion is involved, the writ of mandamus may be issued only to compel the exercise of its discretion. It may not be issued to control the exercise of discretion except where an abuse of discretion is shown. Ex parte Auto-Owners Ins. Co., 548 So.2d 1029 (Ala.1989). Based on the facts and our review of the law, we believe that this is one of the cases that warrant such a drastic remedy.

The Claims of the Tricare Stockholders

The contract upon which the Tricare stockholders base their third-party complaint and their cross-claim is a contract between two corporate entities — ReLife and Tricare. This interim management agreement obligates ReLife to “make up any negative cash flow items” arising out of the operation of the Brookwood Tricare facility. The individual stockholders were not parties to this transaction.[2]
Any action based on that contract must be brought in the name of the corporate entity, Tricare. An action was brought in the name of Tricare, and that action has been settled, as evidenced by the release signed by the bankruptcy trustee acting on behalf of Tricare and the “Joint Stipulation and Motion for Dismissal” signed by the bankruptcy trustee for Tricare and the attorney for ReLife.
“It has long been settled that ‘[a] corporation, just like an individual, must enforce its own rights and privileges.’ ” Ramsey v. Taylor, 567 So.2d 1325, 1327 (Ala.1990), quoting Russell v. Birmingham Oxygen Service, Inc., 408 So.2d 90, 93 (Ala.1981). Although George Warren, Sr., George Warren, Jr., and John Sumner are stockholders in Tricare, this fact, standing alone, does not give them standing individually to assert claims based on an alleged harm to the corporation or to recover corporate property. See Ramsey, supra; McDonald v. U.S. Die Casting & Dev. Co., 541 So.2d 1064, 1068 (Ala.1989); Green v. Bradley Constr., Inc., 431 So.2d 1226, 1229 (Ala.1983); Stevens v. Lowder, 643 F.2d 1078, 1080 (5th Cir.1981). It appears that the corporation, Tricare, is the only real party in interest and the only entity that can pursue any action arising out of the enforcement of the contract. This action has been pursued and Tricare and ReLife have settled their differences. Therefore, the trial court abused its discretion in not dismissing the third-party complaint and the cross-claim against ReLife, based on Rule 17(a), Ala.R.Civ.P.

Mrs. Warren’s Claims

Mrs. Warren alleges that she was a third-party beneficiary of the interim management agreement entered into by Tricare and ReLife.[3] As Mrs. Warren affirmatively *668 states in her complaint, she was a creditor of Tricare when ReLife and Tricare entered into the interim management agreement, as was alleged in the third-party complaint. “ ‘To recover under a third-party beneficiary theory, the complainant must show: (1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; (2) that the complainant was the intended beneficiary of the contract; and (3) that the contract was breached.’” Ramsey, 567 So.2d at 1327, quoting Collins Co. v. City of Decatur, 533 So.2d 1127, 1132 (Ala.1988).
In her complaint, Mrs. Warren alleges that she is a creditor, based on the agreement with Tricare and three of its stockholders as individuals. This agreement was executed almost two years before the date of the agreement between ReLife and Tricare, under which Mrs. Warren based her claims that she was a beneficiary. The ambiguous “negative cash flow” clause in the contract between ReLife and Tricare does not specifically mention Mrs. Warren, and neither Mrs. Warren nor the Tricare stockholders contend that it does. To ReLife, Mrs. Warren is only one of many creditors of Tricare that existed at the time of the drafting of the interim management agreement. Tricare has settled its dispute with ReLife, as evidenced by the release. Thus, Mrs. Warren’s action as a creditor can be pursued only through an action against her guarantors or in the bankruptcy proceeding against Tricare.

Conclusion

In the alternative, ReLife seeks the transfer of this action to the Jefferson Circuit Court, based on the doctrine of forum non conveniens. We do not have to consider this alternative request.
The writ of mandamus is due to be issued. The trial judge is directed to enter the appropriate orders striking the claims against ReLife filed by Mrs. Warren and the Tricare stockholders.
WRIT GRANTED.
HOOPER, C.J., and SHORES, HOUSTON, and INGRAM, JJ., concur.
KENNEDY and BUTTS, JJ., dissent.

. The release read as follows:
“KNOW ALL MEN BY THESE PRESENTS that the undersigned Tricare Rehabilitation Systems, Inc., ('Tricare'), acting through its duly appointed and authorized Trustee, Max • Pope, having been properly authorized by the United States Bankruptcy Court to execute this release on behalf of the foregoing, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby, for itself and its successors and assigns, generally release, REMISE, ACQUIT and FOREVER DISCHARGE ReLife, Inc., ... and [its] parent, subsidiary and affiliated corporations, successors and assigns, officers, directors, servants, shareholders, attorneys, and agents (all of the foregoing being hereinafter sometimes individually and collectively referred to as 'Releasees’), of and from any and all claims, actions, causes of action, demands, rights, damages, costs, attorney [s’] fees, expenses, debts, liabilities and compensation of any and every kind, known or unknown, which Tricare now has, may have or ever had against Releasees, or any of them, the basis for which arose or occurred at any time prior to the date hereof, including, without limitation, any such claims or third party claims which have been asserted or could be asserted in the case of ‘Warren v. Warren,' Case Number CV-94 — 14, presently pending in the Circuit Court of Perry County, Alabama.
"This Release shall not, however, release any claim against Purchaser for any alleged medical malpractice in the operation of the Inpatient Unit or the Outpatient Unit, nor shall this release discharge Purchaser from any of its responsibilities under the Indemnification Agreement between Purchaser and Max C. Pope dated March 1, 1994.
"Tricare warrants and represents that it has not sold, assigned, transferred, conveyed or otherwise disposed of any claim, action, cause of action, demand, right, loss, damage or liability covered by this General Release.”

. The contract in question was signed twice on behalf of Tricare by George Warren, Jr., as president of Tricare. The Tricare stockholders do not dispute this in their reply brief. In fact, in their statement of facts, the Tricare stockholders state the following pertaining to the contract:
"In February 1993, ReLife agreed to purchase all of Tricare’s assets. Pending the close of the purchase agreement, ReLife and Tricare entered into an Interim Management Agreement, whereby ReLife agreed to take full control over the management of Tricare's operations ...."
There is no mention of any alleged individual interest on behalf of George Warren, Jr., or, for that matter, any of the other Tricare stockholders.

. The complaint specifically alleges:
"7. Defendant ReLife, Inc., ... entered into certain contracts with the remaining Defendants [George B. Warren, Jr., George B. Warren, Sr., and John Sumner] as more particularly described in the third-party Complaint in this action.
"9. [sic] Those contracts were intended by the parties to them to benefit Plaintiff in that she was creditor of the Defendants other than ReLife and payment to her made up a part of the negative cash flow items described in those contracts.
"10. One of the principal purposes of the agreements between Defendant ReLife on the one hand and the remaining Defendants on the other was to see that the payments owed to Plaintiff were made.
“11. The parties at the time of entering into the contracts intended to bestow a direct benefit on Plaintiff.
*668 “12. Under these circumstances, Plaintiff occupies the status as a third-parly beneficiary to the said contracts.”