**Michael Guy HOLTON, Plaintiff,**

v.

**BLUE CROSS and BLUE SHIELD OF SOUTH CAROLINA, et al., Defendants.**

No. CIV.A. 98–A–889–S.

United States District Court, M.D. Alabama, Southern Division.

July 27, 1999.

**1340**

Anne Laura R. Parker, Ozark, AL, Rhon E. Jones, Thomas J. Methvin, Beasley, Allen, Crow, Methvin, Portis & Miles, PC, Montgomery, AL, for Michael Guy Holton, plaintiffs.

David R. Boyd, Sterling G. Culpepper, Jr., Donald R. Jones, Jr., Balch & Bingham, Montgomery, AL, for Blue Cross and Blue Shield of South Carolina, Almetto Ins. Underwriter, defendants.

Robert P. MacKenzie, III, Reed R. Bates, Geoffrey S. Bald, Starnes & Atchison, Birmingham, AL, for Choice Behavioral Health Partnership, Pam Moore, Fictitious Defendant(s), A, B, and C, defendants.

### MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on a Motion for Summary Judgment, filed by Defendants Choice Behavioral Health Partnership ("Choice") and Pam Moore ("Moore") (collectively, "the Choice Defendants") on December 17, 1998 (Doc. # 21).

Holton originally filed his Complaint in the Circuit Court of Coffee County, Alabama on June 26, 1998, alleging state law claims for breach of contract, fraud, and conspiracy to defraud. Blue Cross and Blue Shield of South Carolina ("Blue Cross"), another Defendant, removed the case to this court on August 12, 1998, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446. Holton filed a Motion to Remand on September 10, 1998. Because Holton did not file a brief in support of his Motion to Remand, despite an order from the court requiring him to do so, his Motion to Remand was denied. The court has jurisdiction pursuant to 28 U.S.C. §§ 1442(a)(1) and 1367(a).

The Choice Defendants' Motion for Summary Judgment alleges that they are due summary judgment as a matter of law because Holton cannot produce substantial evidence to support claims of fraudulent misrepresentation or suppression, and because there has been no breach of a contract between Holton and Defendants. For reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

### II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions

of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### III. *FACTS*

The submissions of the parties establish the following facts:

Choice is a United States Department of Defense subcontractor which manages mental health care for members of the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS"), now known as TRICARE. *See* Moore Aff. at 1, ll. 8–10.[1] The prime contractor is Humana Military Healthcare Services. *Id.* As a managed care company, Choice authorizes and manages mental health services provided to CHAMPUS/TRICARE beneficiaries in parts of the southeastern United States. Defendant Pam Moore ("Moore") is an Area Manager for Choice; she is responsible for the day-to-day operations of the Birmingham Choice field office, which serves the Alabama area. *See id.* at 1, l. 16 through 2, l. 2.

Plaintiff Holton is a licensed professional counselor in the State of Alabama and a listed provider of mental health services under the CHAMPUS/TRICARE program. Holton's claims in this lawsuit arise from Defendants' alleged non-payment for mental health services provided by Holton to CHAMPUS/TRICARE beneficiaries.

Choice provides authorization to counselors such as Holton to perform mental health services for CHAMPUS/TRICARE members. Moore Aff. at 2, ll. 3–4. Choice does not pay claims; rather, it authorizes the performance of services, allowing service providers such as Holton to submit claims for payment to Blue Cross and Blue Shield of South Carolina ("Blue Cross and Blue Shield") and its subcontractor, Palmetto Government Benefits Administrator ("PGBA"),[2] which completes the processing and payment of claims. *See* Moore Aff. at 2, ll. 6–8.

Mental health services, with the exception of the initial eight (8) outpatient mental health visits and emergency visits, must be preauthorized by Choice for the service provider to receive payment under

---

1. The submissions provided to this court by various parties in this case refer both to CHAMPUS and to TRICARE. To avoid confusion, the court will use both labels.

2. PGBA is listed in the style of the Complaint as "Palmetto Insurance Underwriter." For purposes of this Memorandum Opinion, the court assumes that both titles refer to the same entity.

the CHAMPUS/TRICARE plan, and if mental health services are not properly authorized by Choice, PGBA will not consider a claim for payment to the service provider. *See id.* at 2, ll. 8–11; Ex. 1, TRICARE Provider Handbook, at 87. A copy of the TRICARE Provider Handbook (the "Handbook") was given to Holton's administrative assistant, Fran Walters, at a Choice training seminar in Dothan, Alabama on July 16, 1996. *See* Moore Aff. at 2, ll. 14–15.

Holton provided mental health counseling services to CHAMPUS/TRICARE members from July of 1996 through October of 1997. PGBA did not initially pay the claims submitted by Holton for these services. *See* Moore Aff. at 3, ll. 8–9. Choice became aware of a problem with the payment of Holton's claims in September of 1997. *Id.* at 3, ll. 11–13. On September 11, 1997, Moore contacted Holton's office and stated that she would investigate the situation if Holton would provide copies of the unpaid claims. *Id.* at 3, ll. 14–16.

On October 1, 1997, Moore[3] visited Holton's office in order to assist with Holton's claims and was advised to obtain copies of the claims from Holton's attorney. *Id.* at 3, ll. 15–17. On October 2, 1997, Holton's attorney provided Choice copies of claims for forty-four (44) dates of services. *Id.* at 3, l. 18. A review of the claims revealed that no prior authorization had been requested or granted on thirty (30) claims which required authorization.[4] *Id.* at 3, ll. 18–20.

On October 14, 1997, Moore met with Holton's attorney and provided further information on the status of the claims in a letter to Holton. *Id.* at 3, ll. 22–23. Holton alleges that Moore informed him on October 27, 1997 that the claims in question would be expedited and "hand carried" through to PGBA for payment. *See* Holton Aff.

Moore met with Holton again on November 5 and 6, 1997. *Id.* at 4, ll. 1–2. Holton states that at the November 5 meeting, a "grid" showing the status of the claims was presented and that none of the reasons given for Blue Cross' failure to pay the claims was "lack of pre-authorization." Holton Aff. at 3, ll. 7–14. Holton states that he handed Moore copies of Outpatient Treatment Reports ("OTRs") on November 6, 1997, and that when he asked her, "is this all you need to get these processed and paid," Moore responded "yes." Holton Aff. at 3, ll. 17–20. On November 12, 1997, Choice, through retroactive review, authorized the care performed by Holton. *See id.* at 4, ll. 10–11. Following Choice's authorization, Holton's claims were submitted to PGBA for consideration of payment. *See id.* at 4, ll. 10–11.

## IV. DISCUSSION

As was earlier stated, Holton seeks to hold the Choice Defendants liable for fraudulent misrepresentation, suppression, conspiracy to defraud, and breach of contract. The Choice Defendants have moved for summary judgment as to each of Holton's claims.

### A. Fraudulent Misrepresentation

■ The Choice Defendants argue that Holton cannot establish fraud on the part of Choice or Moore. Under Alabama law, to establish a claim for fraudulent misrepresentation, a plaintiff must establish: (1) a misrepresentation of a material fact; (2) made willfully to deceive, or recklessly without knowledge; (3) which was reasonably relied upon by the plaintiff under the circumstances; and (4) which caused damage as a proximate cause. *See Foremost*

---

3. Holton states that Moore held herself out as a representative of Choice, PGBA, and Blue Cross and Blue Shield when she met with him. *See* Holton Aff. at 3, ll. 34–35.

4. The other fourteen (14) claims did not require authorization from Choice because they were within the first eight (8) mental health visits by the beneficiary. *See* Moore Aff. at 3, ll. 20–21.

*Ins. Co. v. Parham*, 693 So.2d 409, 423 (Ala.1997) (adopting reasonable reliance standard and abandoning justifiable reliance standard). Holton claims that Moore made two misrepresentations to Holton.

■ First, Holton alleges that Moore told him that the claims in question would be expedited and "hand carried" through to PGBA for payment. *See* Holton Aff. As to this representation made by Moore, the court finds no evidence to support Holton's argument that this representation was false. Even under Holton's restatement of what Moore said, he does not contend that she said the claims would be expedited and paid, but just that the claims would be expedited and hand carried to PGBA.

In addition, Holton has presented no evidence that he relied in any way on this representation. The Choice Defendants point out that there is no testimony by Holton that he relied in any way upon any statement or promise by Moore or Choice before treating any of the individuals for whom he eventually submitted claims. The court has been pointed to no, and has not found on independent review any, statement in Holton's affidavit that he relied in any way on Moore's statement. *See Wade v. Chase Manhattan Mortgage Corp.*, 994 F.Supp. 1369, 1382 (N.D.Ala.1997)(stating that a plaintiff must present sufficient evidence as to all of the elements of fraud to avoid summary judgment), *aff'd without op.*, 132 F.3d 1461 (11th Cir.1997); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986)(the plaintiff must go beyond the allegations of the pleadings and present evidence to support his claims). In fact, Holton's evidence is that after his meeting with Moore in which she made the statement at issue, he scheduled another meeting with Moore for November of 1997. Holton's Affidavit at page 3. Thus, the only evidence presented to the court which speaks to Holton's actions in relation to Moore's statement is that Holton continued to take action to have his claim submitted after he met with Moore.

In *Liberty National Life Ins. Co. v. Allen*, 699 So.2d 138 (Ala.1997), the Alabama Supreme Court stated that a plaintiff must show that he relied on a representation and that he acted on this reliance. The plaintiff in *Allen* heard a representation and reacted by writing a letter to confirm it. The court held that the plaintiff did not rely on the representation because he questioned the validity of it. *Id.* at 141. While the actions in *Allen* occurred closer in time than the facts in this case, the court finds that this case is similar to the facts in *Allen*. That is, that the only evidence offered by Holton which speaks to the issue of reliance on Moore's statements demonstrates that Holton scheduled another meeting with Moore. Because Holton has not made any statement in his Affidavit with regard to reliance, and because the only evidence before the court indicates that he did not rely to his detriment on Moore's initial statement, the court concludes that Holton has failed to create a question of fact as to reasonable reliance.

Accordingly, the court finds that the Choice Defendants are entitled to summary judgment on the fraud claim based on Moore's statement, which has not been shown to be a misrepresentation, nor has Holton shown that he relied on it, that the claims would be expedited and carried by hand through to PGBA for payment.

■ Holton also brings a fraud claim based on a second alleged misrepresentation by Moore. Holton alleges that Moore, as a representative of Choice and the other defendants, in a meeting which occurred in November of 1997, answered Holton's question in the affirmative when he asked her whether the Outpatient Treatment Reports, OTRs, were all Moore needed to get the claims processed and paid. Holton further contends that he has been damaged as a consequence of the representations because the claims have not yet been paid.

Defendants Choice and Moore contend that there is no evidence that their actions or statements caused Holton to act or to refrain from acting. Holton, despite the authorization requirement stated in the Handbook, provided mental health services to CHAMPUS/TRICARE beneficiaries without authorization. The Choice Defendants note that given that Holton does not claim to have talked with Moore prior to August or September 1997, neither Moore nor Choice induced Holton to provide these services without authorization.

■ In addition, there is no statement in Holton's Affidavit that he relied on Moore's November 1997 statement to his detriment. A plaintiff must present sufficient evidence as to all of the elements of fraud to avoid summary judgment. *See Wade v. Chase Manhattan Mortgage Corp.*, 994 F.Supp. at 1382; *see also Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548 (the plaintiff must go beyond the allegations of the pleadings and present evidence to support his claims). Instead, Holton states that he has now received payment for a small portion of the claims. Holton has also filed this lawsuit in a further effort to have the claims paid. The court cannot conclude, therefore, since there is no evidence before the court that Holton relied on Moore's statements, that Holton has created a question of fact as to whether he reasonably relied on Moore's statements. The court concludes, therefore, that the Choice Defendants are entitled to summary judgment on this fraud claim.

## B. *Fraudulent Suppression*

■ To sustain a claim for fraudulent concealment or suppression under Alabama law, a plaintiff must produce substantial evidence establishing: (1) a duty on the part of the defendant to disclose; (2) the defendant's suppression of material facts; (3) the defendant's knowledge of the facts and their materiality; (4) action by the plaintiff in reliance on the suppression; and (5) damages resulting from the reliance action. Ala.Code § 6–5–102; *Wolff v.*

*Allstate Life Insurance Company*, 985 F.2d 1524 (11th Cir.1993) (citing *Hardy v. Blue Cross & Blue Shield*, 585 So.2d 29, 32 (Ala.1991)). Holton contends that Choice and Moore had a duty to disclose the actual reason that Holton's claims had not been paid: that prior authorization had not been given and that, because such authorization had not been given, the claims had not been submitted for payment.

First, the court notes that Holton's own version of the events which transpired is that none of the reasons for the denial were for "lack of pre-authorization," but, Holton goes on to state that the reasons given were "not in the system, duplicate of service previously claimed, and authorization not on file." Holton Affidavit, page 3. The court finds that Holton has not presented substantial evidence that the cause of the claim denial was suppressed since his own evidence reveals that lack of authorization was at least one reason given.

■ Even assuming that Holton presented substantial evidence to support suppression or concealment of a material fact, Holton has not presented sufficient evidence to support that he was induced to act by the Choice Defendants' failure to tell him that his claims were not paid because they were not preauthorized. There is no evidence in Holton's Affidavit which speaks to any inducement to act or to refrain from acting. The undisputed evidence is that Holton had already rendered treatment to the patients for whom he was claiming benefits before any alleged concealment of the reason for the denial of those claims occurred.

In addition, the Choice Defendants argue that no material fact was suppressed which could have induced Holton to treat the patients because the fact that preauthorization was required for payment for mental health services beyond the initial eight (8) outpatient visits is clearly stated in the TRICARE Handbook. The Choice Defendants also present evidence that Holton was provided with Out Patient Treat-

ment Reports which stated that they are forms to be submitted for Choice to approve or disapprove services before they are performed. Defendant's Exhibit 2. The Choice Defendants further present evidence that Holton received a letter from Human Military Health Services, the prime contractor, which sets out the authorization requirement. Defendant's Exhibit 3.

Holton does not deny that a copy of the Handbook was provided to him. He argues in his brief, however, that there is no evidence that he or his staff were aware of the contents of the Handbook, even though they had access to it. He also states that the misrepresentations by Moore were made with full knowledge of what the handbook required and that on two occasions, representations were made "aside from any requirement in the handbook." Plaintiff's Response at page 5. In other words, Holton seems to argue that the fact that the authorization requirement had been disclosed in the handbook is irrelevant because misrepresentations were made aside from what was contained in the Handbook.

■ Although Holton's claim is a fraudulent suppression claim, the court finds guidance in evaluating his theory in Alabama precedent on fraudulent misrepresentation. Under Alabama law, reliance must be reasonable. *See Foremost Ins. Co. v. Parham,* 693 So.2d 409, 423 (Ala. 1997). Under this rule, Holton cannot support his claim with the theory that he followed representations that were contrary to a Handbook which he had in his possession, because any reliance by Holton under these circumstances would not have been reasonable. *Cf. Tyler v. Equitable Life Assurance Society of the United States,* 512 So.2d 55, 57 (Ala.1987)(not reasonable to rely on a representation which

contradicts a written contract subsequently entered into by the parties). More important, if Holton intends to argue that he was induced to treat the patients because of the suppression of the authorization requirement, the statements of Moore, which came after his treatment of the patients upon which he has based his claim, could not have induced him to treat them.[5] Instead, Holton made the decision to treat them while he, as he concedes, had access to the Handbook which stated that there was a pre-authorization requirement. *Cf. Roper v. Assoc. Fin. Serv. of Alabama, Inc.,* 533 So.2d 206, 209 (Ala.1988)(holding that a defendant does not suppress the truth if he presents for plaintiff's review and signature a document that clearly discloses the truth).

The court finds that Holton has not provided substantial evidence to support his claims for fraudulent suppression or concealment, and Defendants' Motion for Summary Judgment is due to be granted as to these claims.

### C. *Conspiracy to Defraud*

■ Holton alleges that Defendants Moore, Choice, Palmetto, and Blue Cross conspired to defraud Holton. A civil conspiracy requires a combination of two or more individuals to accomplish an unlawful purpose or to accomplish a lawful end by unlawful means. *Eidson v. Olin Corp.,* 527 So.2d 1283, 1285 (Ala.1988). Where civil liability for a conspiracy is sought to be enforced, the conspiracy itself furnishes no cause of action; rather, the gist of the action is not the conspiracy alleged but the wrong committed. *McLemore v. Ford Motor Co.,* 628 So.2d 548, 550 (Ala.1993) (citations omitted). Moore and Choice contend that they are entitled to summary judgment on this civil conspiracy count because Holton's substantive claims for

---

**5.** Holton does not articulate any theory, or provide evidence to support a claim, that he was induced to provide continuing treatment. The court notes, however, that in his Complaint, he has alleged that he continued treat-

ment of the patients because of the requirements of counseling ethics, Complaint at ¶ 25, not out of reliance on statements or actions by the Defendants.

fraud cannot survive the motion for summary judgment.

 Because the court has concluded that the Choice Defendants are entitled to summary judgment on Holton's fraud claims, Holton's claim for conspiracy to defraud must also fail under Alabama law as to the Choice Defendants. *See Wilson v. Gayfers Montgomery Fair Co.*, 953 F.Supp. 1415, 1423 (M.D.Ala.1996)(granting summary judgment on a conspiracy claim where plaintiff failed to establish one of the prima facie case elements of fraud). Accordingly, summary judgment is due to be granted for Moore and Choice on Holton's conspiracy claim.

### D. *Breach of Contract*

Holton has also brought a claim for breach of contract. The Choice Defendants argue that they are entitled to summary judgment on Holton's breach of contract claim because no contractual relationship for payment of claims exists between Holton and the Choice Defendants. Instead, the Choice Defendants argue, the only duty they owed to Holton was to determine whether to authorize Holton's mental health services, a duty which they discharged by granting retroactive authorization to the claims at issue in this case.

 The court notes that Choice's contract to provide authorization for mental health services to CHAMPUS/TRICARE beneficiaries, though various subcontractors, is with the Department of Defense. Holton, however, is a third-party beneficiary of this contract.

 To recover under a third-party beneficiary theory, Holton must show: (1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; (2) that Holton was the intended beneficiary of the contract; and (3) that the contract

was breached. *See Collins Co. v. City of Decatur*, 533 So.2d 1127, 1132 (Ala.1988).

 Holton argues that because Choice authorized claims for payment, Choice can be held responsible for denial of claims. While it apparently is true that it is Choice's decision not to authorize claims, and a denial of authorization ultimately results in the non-payment of claims, no evidence has been presented to contradict Moore's statement that Choice retroactively authorized the services performed by Holton for the claims at issue. Since Choice authorized Holton's services for the disputed claims, Choice did not prevent payment of the claims. The evidence which has been provided to the court demonstrates that a determination of which of the authorized claims were to be paid was made by an entity other than Choice after Choice approved payment.

The court finds that Holton has not presented a question of material fact that would show that Choice or Moore breached any contractual duty owed to Holton as an intended third-party beneficiary. The Choice Defendants' Motion for Summary Judgment is, therefore, due to be granted on Holton's breach of contract claim as to Moore and Choice.[6]

### V. **CONCLUSION**

For the reasons discussed, the Motion for Summary Judgment filed by Defendants Choice Behavioral Partnership and Pam Moore is due to be GRANTED.

---

**6.** The court has not ruled in this opinion on the viability of any contract claims as asserted against other Defendants in this case.